2001 WY 108

Stuart **THOMPSON** and Mary **Thompson**,
Appellants (Defendants),

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SUBLETTE,**
Appellee (Plaintiff).

No. 99–328.

Supreme Court of Wyoming.

Nov. 8, 2001.

Gerald R. Mason of Mason & Graham, P.C., Pinedale, WY, Representing Appellants. Argument by Mr. Mason.

Dale Aronson, Sublette County Attorney, Pinedale, WY, Representing Appellee. Argument by Mr. Aronson.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] This is an appeal from a district court order enjoining the Thompsons from using their land for activities associated with a log home business and a ski enterprise on the ground that those activities violated Sublette County zoning regulations. We affirm the district court order.

### ISSUES

[¶ 2] The parties raise the following issues:

I. Whether the trial court erred in finding that the appellants failed to establish estoppel as a defense.

II. Whether the trial court erred in finding that the appellants failed to establish laches as a defense.

III. Whether the trial court erred in finding that activities of appellants relating to White Pine are not authorized within an agricultural district (A 1) zone.

### FACTS

[¶ 3] The Thompsons own a parcel of land located in Sublette County which is zoned A 1 agricultural. Pursuant to the county zoning regulations, the authorized uses of the land relevant to this case include general agricultural uses and outdoor recreation facilities for hunting, fishing, horseback riding, hiking, or winter sports uses incidental to the principal agricultural use.

[¶ 4] The Thompsons use the land in part for ranching. Beginning in 1991 and, they allege, in reliance on statements made to them by the county zoning administrator and a former county commissioner, the Thompsons began remodeling and new construction of buildings on the property for use in connection with two businesses in which they were involved, Logcrafters, a log home building venture, and White Pine, a ski area. Although the main activities of both businesses take place off the premises, the Thompson property was used for storage, maintenance of equipment, administrative offices, and design work in connection with the businesses.

[¶ 5] Over the years, neighbors periodically complained about the increase in local traffic, dust, noise, use of heavy equipment, and decline in property value which allegedly resulted from the activities on the Thompson property. Finally, in September of 1998, the Board of County Commissioners of Sublette County filed a complaint for injunctive relief in district court alleging that the activities on the Thompson property associated with Logcrafters and White Pine violated county zoning regulations. After a bench trial on August 23, 1999, the court held that the activities were not authorized within an agricultural zone and entered an order granting a permanent injunction. The Thompsons timely appealed from the district court's order.

### STANDARD OF REVIEW

[¶ 6] Laches is a form of equitable estoppel. *Goshen Irr. Dist. v. State Bd. of Control*, 926 P.2d 943, 949 (Wyo.1996); *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292, 1297 (Wyo.1991). These claims, therefore, are subject to the same standard of review.

[¶ 7] Whether laches or, by analogy, equitable estoppel is available as a defense is a question addressed to the sound discretion of the district court. *Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021, 1025 (Wyo.1989). Our review of the Thompsons'

first two claims, therefore, must focus upon whether or not the trial court abused its discretion in finding that equitable estoppel and laches were not defenses to the county commissioners' claim for injunctive relief. *Id.* Under the abuse of discretion standard, we determine whether the trial court could reasonably conclude as it did and whether any part of its ruling was arbitrary or capricious. *Vaughn v. State,* 962 P.2d 149, 152 (Wyo.1998).

■ [¶ 8] The Thompsons' third claim, that the district court erred in finding that the White Pine activities are not authorized in an agricultural district (A 1) zone, involves an application of the law to the facts.

Where the determination to be reviewed presents a mixed question of law and fact, i.e., a conclusion reached through application of legal precepts to the historical and narrative events of a particular case, the reviewing court will defer to the agency's findings of basic fact but will correct misapplications of the law to those facts. If the agency has not invoked and applied the correct rule of law, we correct it.

*Rodgers v. State, ex rel. Workers' Compensation Div.,* 939 P.2d 246, 249 (Wyo.1997) (citation omitted).

## DISCUSSION

### Estoppel

■ [¶ 9] In their first claim for relief, the Thompsons allege that the board of county commissioners should be estopped from seeking to enjoin the activities on their land because of the actions of its own representatives. Specifically, the Thompsons allege that they purchased the land in question and made the improvements necessary for the operations of Logcrafters in reliance on statements made to them by a former commissioner and the county zoning administrator.

[¶ 10] Prior to purchasing the land at issue here, the Thompsons owned a ten-acre parcel north of Cora in Sublette County where they conducted operations associated with Logcrafters. When they sought a variance from the county to allow them to build a storage facility on the ten-acre parcel, they allege they were told there would be no problem with their operations if they owned a larger parcel of land zoned A 1 closer to town. The Thompsons allege that they purchased the property now at issue in reliance on that assurance. They further allege that, before making the improvements necessary for Logcrafters' operations on the new property, they spoke with the county zoning administrator and received assurances that, because the land was zoned A 1 agricultural, no special permits were necessary. Based on the assurances of the zoning administrator, the Thompsons made improvements costing them $170,000. They claim that they were induced by the assurances of the county officials to believe their operations were permissible, they relied on the assurances to their detriment, and the board of county commissioners should now be estopped from enforcing the zoning regulations.

■ [¶ 11] We have said that equitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances, and may not be invoked where it would serve to defeat the effective operation of a policy adopted to protect the public. *Sare v. Sheridan County Bd. of County Com'rs,* 784 P.2d 593, 595 (Wyo.1989); *Big Piney Oil & Gas Co. v. Wyoming Oil & Gas Conservation Com'n,* 715 P.2d 557, 560 (Wyo.1986). In order to invoke the doctrine against a government or public agency functioning in its official capacity, there must be a showing of affirmative misconduct. *In re General Adjudication of All Rights to Use Water in the Big Horn River System,* 753 P.2d 76, 90 (Wyo.1988), *cert. granted,* 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 987, *judgment aff'd,* 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989). Affirmative misconduct exists where a person, by his acts, representations, or admissions, intentionally or through culpable negligence induces another to believe that certain facts exist and the other person rightfully relies and acts on such belief and will be prejudiced if the former is permitted to deny the existence of such facts. *Id.* at 89.

■ [¶ 12] Equitable estoppel does not apply to governmental or sovereign func-

tions, especially where it would defeat the public interest. *Wells v. Bd. of Trustees of Laramie County Sch. Dist. No. 1,* 3 P.3d 861, 867 (Wyo.2000); *State Highway Com'n v. Sheridan–Johnson Rural Electrification Ass'n,* 784 P.2d 588, 592 (Wyo.1989). The state, and likewise the county, may not be estopped for the unauthorized acts or errors of its officers and employees. *Wells,* 3 P.3d at 867. In Wyoming, the recognized exception to this rule is that a governmental agency may be estopped for the unintentional, misleading statements of its representative when the agency is functioning in a proprietary capacity. *Id.*

[¶ 13] Here, there is no assertion that the board of county commissioners was functioning in a proprietary capacity, and the recognized exception does not apply. Therefore, absent a showing by the Thompsons of rare and exceptional circumstances justifying the application of equitable estoppel, the claim must fail.

[¶ 14] The Thompsons argue that unusual circumstances do exist justifying the application of equitable estoppel. They claim that county officials induced them to change their position to their detriment by encouraging them in 1991 to purchase a larger parcel of land zoned A 1 and representing that, if they did so, they could continue their log home operations. They claim that county officials further induced them to change their position to their detriment by assuring them that they could build their buildings, make other improvements, and conduct operations on the new parcel without permits. They claim that they relied on the statements of county officials when they invested $170,000 in making the improvements and county officials knew about the investment. Under these "unusual circumstances," the Thompsons claim, the county should be estopped from taking the position nearly eight years later that the operations are in violation of county zoning resolutions.

[¶ 15] From our review of the record, we are not persuaded that the district court abused its discretion in rejecting the Thompsons' equitable estoppel claim. This is particularly true in light of the longstanding rules that members of boards of county com-

missioners cannot act to bind the county except through official proceedings, and persons dealing with public entities are charged with ascertaining that the person with whom they are dealing possesses the legal authority to bind the entity. *Robert W. Anderson Housewrecking & Excavating, Inc. v. Bd. of Trustees, School Dist. No. 25, Fremont County,* 681 P.2d 1326, 1329–30 (Wyo.1984); *George W. Condon Co. v. Bd. of Com'rs of Natrona County,* 56 Wyo. 38, 103 P.2d 401, 403 (1940). The Thompsons were charged with ascertaining that neither the county zoning administrator nor a single, individual member of the board of county commissioners had any authority to bind the board and an official proceeding before the board of county commissioners as a whole was required to determine what they could and could not do on their property. From the record before us, there is no indication the Thompsons made any effort to ascertain what authority individual county representatives had, nor is there any evidence of any official proceeding before the board of county commissioners as a whole. We hold that the district court did not abuse its discretion in rejecting the Thompsons' equitable estoppel claim.

### Laches

[¶ 16] The Thompsons assert that the board of county commissioners' claim for injunctive relief should be barred by laches. Specifically, they assert that the board of county commissioners stood by for eight years while they expended considerable sums of money improving their property and it should not now be allowed to enjoin the business at their expense.

[¶ 17] Laches is defined as such delay in enforcing one's rights that it works to the disadvantage of another. *Big Piney Oil & Gas Co.,* 715 P.2d at 561. A claim of laches is comprised of two elements—inexcusable delay and injury, prejudice, or disadvantage to the defendants or others. *Moncrief,* 775 P.2d at 1025. Governments and their agencies generally are not barred by laches when enforcing a public or governmental right. *Big Piney Oil & Gas Co.,* 715 P.2d at 561.

[¶ 18] From the record before us, we are unable to find an abuse of discretion in the district court's order granting the injunction. Neither the doctrine of estoppel nor the doctrine of laches prevents the board of county commissioners from fulfilling its duty to enforce the local zoning resolutions.

### White Pine Activities

[¶ 19] The Thompsons claim that the district court erred in finding the activities relating to White Pine are not authorized within an agricultural district (A–1) zone. The Thompsons cite the language of the applicable zoning regulations which allows outdoor recreational facilities for winter sports incidental to agricultural use. Arguing that we are required to give this language the least restrictive interpretation, the Thompsons claim that the activities relating to White Pine which occur on their property involve winter sports incidental to agricultural use.

[¶ 20] The Sublette County zoning regulations provide in relevant part as follows:

Section 3. *Authorized Uses.* The following uses shall be authorized in the various zoning districts, provided that they conform to the applicable development standards and conform to the applicable goals, policies and guidelines of the Sublette County Comprehensive Plan:

. . .

b. In the Agricultural District (A 1)

(1) General agricultural uses;

. . .

(3) Outdoor recreation facilities for hunting, fishing, horseback riding, hiking or winter sports uses incidental to the principal agricultural use[.]

[¶ 21] The Thompsons claim that the White Pine operations which occur on their property are permissible under section 3.b.(3) of these regulations as "winter sports uses incidental to the principal agricultural use." The district court rejected this argument on the basis of its findings that the principal use of the Thompson property is not agricultural and, therefore, the White Pine operations were not incidental to the principal agricultural use as required by the regulations. The district court reached this conclusion based upon the evidence presented that the Thompsons purchased the property in question because of its value to Logcrafters, the log home building enterprise, rather than for its value as a ranch and that Logcrafters, rather than the ranching operation, produces the majority of the income on the property.

[¶ 22] In reaching its findings, the district court relied on cases from other jurisdictions in which courts have attempted to define "incidental use" as the term is commonly used in zoning regulations. In *Lawrence v. Zoning Bd. of Appeals of Town of North Branford,* 158 Conn. 509, 264 A.2d 552 (1969), the court defined "incidental use" as a use which is not the primary use of the property but rather one which is subordinate and minor in significance as compared to the primary use. The court also said that, to constitute an incidental use, the use must be attendant or concomitant to the primary use. The court suggested that the following factors be considered in determining whether a use is incidental: the size of the lot in question, the nature of the primary use, the use made of adjacent lots by neighbors, and the economic structure of the area.

[¶ 23] Applying these factors to the evidence before it, the district court concluded that the primary use of the Thompson property was not agricultural but was for operations associated with Logcrafters and, therefore, the White Pine operations were not incidental to a primary agricultural use as required by the regulations. From the record before us, we cannot say that the district court erred in reaching this conclusion and holding that the White Pine activities are not authorized under the regulations.

[¶ 24] Affirmed.