2003 WY 7

**Frank W. DORSETT, Appellant (Defendant),**

v.

**Tim MOORE, Appellee (Plaintiff).**

No. 02–98.

Supreme Court of Wyoming.

Jan. 17, 2003.

Mary S. Garman, Sundance, Wyoming, Representing Appellant.

Patrick G. Davidson of Daly Law Associates, P.C., Gillette, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

Hill, Chief Justice.

[¶1] Appellant Frank W. Dorsett (Dorsett) challenges the portion of a district court judgment that required him to reimburse a neighboring landowner, appellee Tim Moore (Moore), for one-half of the cost of rebuilding a partition fence. Dorsett claims the district court erred in applying estoppel against him. We disagree and affirm.

## ISSUES

[¶2] Dorsett presents one issue for our review:

Did the trial court err when it sustained the objection by the plaintiff that defendant was estopped by his conduct from complaining that the fence plaintiff had built between the defendant's and plaintiff's deeded land was not a partition fence pursuant to W.S. Section 11–28–106?

## FACTS

[¶3] The parties own neighboring ranches in Crook County. Both ranches con-sist of deeded property as well as lands used pursuant to grazing permits issued by the United States Bureau of Land Management. By early 1999, the fence between the parties' lands had deteriorated and would no longer hold livestock in a number of places. On October 12, 1999, Moore mailed to Dorsett the first in a series of letters addressing fence-related problems. Dorsett received the letter but did not respond. Another letter, dated January 14, 2000, detailed, among other things, problems caused by cattle straying onto Moore's lands. Moore indicated that he was contemplating fence repairs and that he was "looking to share the costs equally" with Dorsett. Dorsett did not respond to this letter.

[¶4] The next letter was dated January 24, 2000. In that letter, Moore detailed the repairs needed on the fence, indicated he intended to hire a fencing contractor, and stated that he expected Dorsett to pay one-half the cost. Moore's letter also provided:

If you will not enter a formal agreement with me to pay for one-half of these re-pairs, I will give you the opportunity to arrange for your share of the labor on one-half of each project.... If you do not take the opportunity to do your share of these projects, which I have outlined, I will do them for you after July 1, 2000.

Although Dorsett received this letter, he did not respond. The next letter from Moore was dated March 3 and suggested the parties hire a reputable fencing contractor to do the work. Again, Dorsett received this letter but did not respond.

[¶5] In August of 2000, Moore contracted with a fencing company to rebuild the fence. The fencing company began work on September 10, 2000, and completed the project on October 6. The contractor rebuilt the fence where it had always been located. On October 26, 2000, Moore mailed a letter to Dorsett requesting payment for one-half of the cost of the fencing project. There was no response to this letter.

[¶6] In March of 2001, following a de-mand letter that went unanswered, Moore, relying on Wyo. Stat. Ann. § 11–28–106,[1]

provides:

---

1. Wyo. Stat. Ann. § 11–28–106 (LexisNexis 2001)

filed this suit to recover, among other things, one-half of the cost of the fencing project. The case was tried to the bench. Dorsett offered testimony that, sometime after the complaint was filed, he hired a local engineer to perform a survey. The survey revealed that the fence was not on the property boundary line in places, although the record is somewhat confusing regarding where the fence deviates. When Moore objected to this testimony regarding deviation from the boundary line, the district court sustained the objection on the ground that Dorsett was estopped from presenting such evidence. The district court allowed Dorsett to make an offer of proof. The district court found generally in favor of Moore. It ordered Dorsett to pay Moore $10,159.71 as one-half of the cost of rebuilding the fence. The district court also ordered Dorsett to pay Moore $954.00 for grazing fees, but Dorsett does not challenge that portion of the judgment.

## DISCUSSION

[¶ 7] Dorsett contends that the district court erred in applying equitable estoppel against him. This Court has defined equitable estoppel in this fashion:

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.

*Snake River Brewing Company, Inc. v. Town of Jackson*, 2002 WY 11, ¶ 28, 39 P.3d 397, ¶ 28 (Wyo.2002) (quoting *State Farm Mutual Auto. Insurance Company v. Petsch*, 261 F.2d 331, 335 (10th Cir.1958)). Dorsett asserts that equitable estoppel is inapplicable because Moore never changed his position in reliance on Dorsett's conduct. Dorsett

claims that Moore was going to repair the fence regardless of Dorsett's action or inaction. Moore responds that, if the district court did apply estoppel, it merely estopped Dorsett from his attempt, at trial, to establish that the fence was not a partition fence because it is not located on the true boundary line. Moore contends that Dorsett was properly estopped from arguing the fence should be located other than where it has always been located.

[¶ 8] In its oral ruling, the district court stated:

I don't know whether estoppel is the proper word or not. But certainly Mr. Moore saw a problem, tried to fix it, wrote letters to his neighbor. Maybe they weren't the best letters you could write, but they were certainly efforts to reach out. And what was the response? Well, clearly the response was no response.

So he still has a problem. And Mr. Dorsett says that there was a problem with cattle going back and forth. But Mr. Dorsett does nothing to solve the problem other than rebuild a fence.

And when it's suggested that maybe it's time for something more than just a band-aid on what's been going on over the years ·because that's not working, Mr. Dorsett doesn't come in and say, "Wait a minute. I like this band-aid approach and I don't want to do it this way. I don't think you've got good bids. I don't think you are going to put the fence in the right place." A lot of things he could have said, but he didn't say anything.

And you do have the right to remain silent. But in civil matters, your silence can be used against you. In criminal cases, your silence can't be used against you.

So your silence is being used against you. You've had the right to remain silent,

---

The owner of any lawful fence which is or becomes a partition fence separating the owner's land from that belonging to some other person may require the person to pay for one-half (1/2) of what it would or does actually cost to construct the partition fence. In case of refusal, the owner may maintain a civil action against the person refusing and is entitled to recover one-half (1/2) of what it would or did

actually cost to construct that portion of the partition fence used by the person and costs of suit. The joint users of a partition fence shall contribute to the cost of maintenance in proportion to their respective interests and if either refuses to pay his share of the cost of maintenance, the other may recover maintenance costs in the manner provided for recovering the cost of construction.

but it's been used against you because you used the ostrich approach: I'll just ignore the problem. I'll ignore the forays of someone trying to solve that problem, and so you did nothing.

Well, Mr. Moore I think is entitled under the statute to do something about that and he did something. And maybe he went a little bit more than, quote, just the bare minimum legal fence, but he didn't have any input from his neighbor even though he tried to get it. So he did what sounds fairly reasonable, at least it sounds reasonable for the Court from the testimony I've heard.

[¶ 9] Although the district court did not specify the equitable doctrine it applied, we do not agree with Dorsett that the district court applied the doctrine of equitable estoppel. Instead, we conclude the district court's ruling is properly characterized as an application of the doctrine of laches, which is simply a form of equitable estoppel. *Thompson v. Board of County Commissioners of the County of Sublette*, 2001 WY 108, ¶ 6, 34 P.3d 278, ¶ 6, (Wyo.2001); *Goshen Irrigation District v. Wyoming State Board of Control*, 926 P.2d 943, 949 (Wyo.1996); *Squaw Mountain Cattle Company v. Bowen*, 804 P.2d 1292, 1297 (Wyo.1991). Laches is defined as such delay in enforcing one's rights that it works to the disadvantage of another. *Thompson*, ¶ 17; *Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission*, 715 P.2d 557, 561 (Wyo.1986). A claim of laches is comprised of two elements—inexcusable delay and injury, prejudice, or disadvantage to the defendants or others. *Thompson*, ¶ 17.

[¶ 10] The district court ruled that Dorsett's delay in enforcing his rights precluded him from asserting rights he would otherwise have been able to assert had he acted more promptly. Dorsett's delay worked a disadvantage to Moore, who completed the fencing project with his own funds, then was required to resort to litigation to recoup one-half of the costs from Dorsett.

In addition, had Dorsett come forward earlier with his concerns, any current problems could likely have been avoided. The district court properly applied the form of equitable estoppel known as laches.

[¶ 11] The district court's ruling finds further support in the equitable maxim that "[e]quity aids the vigilant, not those who slumber on their rights." *Application of Beaver Dam Ditch Company*, 93 P.2d 934, 939, 54 Wyo. 459, 482 (Wyo.1939); *Moncrief v. Sohio Petroleum Company*, 775 P.2d 1021, 1025 n. 5 (Wyo.1989). Here, despite Moore's repeated attempts to resolve the fence problems in a neighborly fashion, Dorsett did not respond. Having slumbered on his rights, Dorsett was in no position to complain about Moore's resolution of the problem or the placement of the fence where it had always been.[2] We find no abuse of discretion in the district court's ruling. *Thompson*, ¶ 7. ("Whether laches or, by analogy, equitable estoppel is available as a defense is a question addressed to the sound discretion of the district court.")

[¶ 12] We must also address Moore's requests that this appeal be summarily affirmed and/or that this Court certify no reasonable cause for this appeal. Moore argues that (1) the appeal should be summarily affirmed because appellant's brief violates various rules of appellate procedure; (2) the appeal should be summarily affirmed because the appellant has not presented a cogent argument; and (3) the Court should certify that there was no reasonable cause for appeal and award costs and attorney fees. We decline all of Moore's invitations.

[¶ 13] Although Dorsett's brief fails to comply with a number of requirements regarding format of appellant's brief found in W.R.A.P. 7.01, we do not, in our discretion, find that these deficiencies require summary affirmance. W.R.A.P. 1.03. In addition, we find Dorsett's argument is supported by authority and cogent enough, although misguided. Thus, we will not summarily affirm on

2. Our ruling is limited to location of the fence for recovery of costs of repair under Wyo. Stat. Ann. § 11-28-106. We offer no opinion on whether the fence is a "boundary fence" or a "fence of convenience." *See Hillard v. Marshall*, 888 P.2d 1255, 1260 (Wyo.1995), and *Kimball v. Turner*, 993 P.2d 303, 306 (Wyo.1999).

that basis or certify no reasonable cause for appeal. Normally, we will certify no reasonable cause for appeal "only in those rare circumstances where an appeal lacks cogent argument, where there is an absence of pertinent authority to support the claims of error, and/or when there is a failure to adequately cite to the record." *Baker v. Reed*, 965 P.2d 1153, 1154–55 (Wyo.1998) (citing *Amen, Inc. v. Barnard*, 938 P.2d 855, 858 (Wyo.1997)); *Stone v. Stone*, 7 P.3d 887, 891 (Wyo.2000). This appeal does not meet those requirements.

[¶ 14] In addition, sanctions under W.R.A.P. 10.05 are usually not available when the appeal challenges a discretionary ruling made by the district court. *Russell v. Russell*, 948 P.2d 1351, 1356 (Wyo.1997); *Wood v. Wood*, 964 P.2d 1259, 1268 (Wyo. 1998). This Court has departed from this general rule in certain circumstances. *See, e.g., Barnes v. Barnes*, 998 P.2d 942, 946 (Wyo.2000) (only purpose served by appeal was "continued harassment of appellee and the waste of judicial resources"); *Meyer v. Rodabaugh*, 982 P.2d 1242, 1245 (Wyo.1999) (appellant waived any claim of error); and *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo.1996) (appellant failed to provide a record to review). However, none of those circumstances are presented in this case. Therefore, because we find the argument to be cogent and supported by authority and because Dorsett challenged a discretionary ruling, we deny Moore's request that we certify no reasonable cause for appeal.

[¶ 15] The district court's Order and Judgment is affirmed.