2012 WY 45

**Brad CARNAHAN and Brenda Carnahan, Appellants (Defendants/Third Party Plaintiffs),**

v.

**Rex I. LEWIS and Vickie R. Lewis, as Trustees of the Rex I. Lewis Living Trust and the Vickie R. Lewis Living Trust, Appellees (Plaintiffs/Third Party Defendants).**

No. S–11–0122.

Supreme Court of Wyoming.

March 27, 2012.

Representing Appellants: Karen Budd–Falen, Franklin J. Falen, Kathryn J.B. Morrow of Budd–Falen Law Offices, LLC, Cheyenne, Wyoming. Argument by Ms. Morrow.

Representing Appellees: Nicholas G.J. Healey and Timothy L. Woznick of Dray, Dyekman, Reed & Healey, PC, Cheyenne, Wyoming. Argument by Mr. Healey.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]  Rex I. Lewis and Vickie R. Lewis, as trustees of the Rex I. Lewis Living Trust and the Vickie R. Lewis Living Trust, (Lewises) and Brad and Brenda Carnahan (Carnahans) own property in a subdivision in Laramie County. The Lewises filed a complaint seeking a declaration that the Carnahans did not have authority to block their use of a public easement to access their property, an injunction requiring the Carnahans to remove a fence they erected across the easement and nuisance damages allegedly caused by the blocked easement. The Carnahans filed counterclaims for ejectment and trespass against the Lewises and a third party complaint against the Lewises and Laramie County (which they alleged had an interest in the easement) to have title to the easement quieted in them.

[¶ 2]  Both parties moved for summary judgment and, after a hearing, the district court issued a decision letter ruling that the Lewises had standing to bring their claim for declaratory relief but not to collect damages for nuisance; Laramie County was not a necessary party; issues of material fact existed precluding summary judgment as to the Carnahans' statute of limitations and laches defenses; and the Board of Laramie County Commissioners' (Board) 2003 denial of an application to replat the subdivision did not estop the Carnahans from maintaining a quiet title claim. Subsequently, the district court ruled that an affidavit recorded in 1994 was not effective to vacate the public easement because it did not comply with state statute. Consistent with that ruling, the district court dismissed the Carnahans' trespass claim. The district court set for trial the Carnahans' statute of limitations and laches defenses. After trial, the district court concluded neither the statute of limitations nor laches barred the Lewises' declaratory judgment action. Further, the district court declared that Laramie County continued to hold the easement in trust for the public, meaning the Lewises have the right to use the easement and the Carnahans do not have the right to obstruct their use. The Carnahans appealed. We affirm.

## ISSUES

[¶ 3]  We re-phrase the issues the Carnahans present as follows:

1.  Whether the district court correctly held:

    a.  the Lewises had standing to seek declaratory relief;

    b.  the Lewises' claims are not barred by the statute of limitations;

    c.  the Lewises' claims are not barred by the doctrine of laches;

    d.  the Carnahans' predecessors-in-interest did not properly vacate the public easement in accordance with Wyo. Stat. Ann. § 34–12–101 et seq.; and

    e.  the Carnahans' trespass claim must be dismissed.

The Lewises contend the district court ruling was correct on all of the above issues and

raise the additional issue that the Carnahans' appeal should be dismissed as premature.

## FACTS

[¶ 4] In June of 1977, the Board acknowledged and approved the final plat for Table Mountain Ranches, Fourth Filing, containing eighty-one separate lots. The Laramie County Clerk recorded the plat in September the same year. The plat subdivided property located in Laramie County south of County Road No. 20 (Valley View Road) approximately eighteen miles west of Cheyenne. The plat included an eighty foot easement named the "Mountain View Loop." The easement begins at its intersection with County Road No. 20, travels south, and then loops through Table Mountain Ranches in a U-shape back to County Road No. 20 approximately 400 to 500 yards west of where it begins. Thus, Mountain View Loop provides access to Table Mountain Ranches from County Road No. 20 at two different points. The plat contained the following dedication:

> KNOW ALL MEN BY THESE PRESENTS; that Robert Tomb and Kenneth H. Barber, owners in fee simple of the land embraced in this subdivision of the within described lands, do hereby declare the subdivision of said land, as appears on this plat, to be their free and voluntary act and deed and in accordance with their desires do hereby dedicate, to the use of the public forever, all of the road rights-of-way shown hereon; do hereby grant, to the use of the public forever, all of the public access and utility easements shown hereon and do hereby grant, for the specified purposes, all of the remaining easements shown hereon.

[¶ 5] The property now owned by the Carnahans was previously owned by Noel R. and Colleen Ann Griffith. The Griffiths purchased the property in February of 1994 as fourteen individual lots—shown as tracts 219, 220 and 223–234 on the Table Mountain Ranches final plat. In March of 1994, the Griffiths filed and the Laramie County Clerk's office recorded an "Affidavit for the Vacation of Certain Tract Lines, Public Access and Utility Easements within the Table Mountain Ranches, Fourth Filing Subdivi-

sion." The affidavit expressed the Griffiths' intent to combine their fourteen lots into one parcel and vacate all interior tract lines and the eighty foot wide public access and utility easement running along and through the parcel. The affidavit went unchallenged at that time and the Laramie County attorney and Cheyenne/Laramie County development office treated it as effectively vacating the tract lines and the public access and utility easement.

[¶ 6] After filing the affidavit, the Griffiths built a home on the property. Construction began roughly in April and was completed by October or November of 1994. The Griffiths also installed a septic system and a garage. The house, garage and septic system are located partially on Mountain View Loop between what were originally tracts 219 and 225 on the Table Mountain Ranches Plat, Fourth Filing. During the time the Griffiths were building their house, the Lewises purchased 83.33 unplatted acres directly west of the Griffiths' property and almost completely surrounded by the subdivision. The Griffiths subsequently conveyed a portion of their property to Troy Griffith and the remainder to the Griffith Family Limited Partnership. In 1999, the Lewises purchased most of the remaining lots in the Table Mountain Ranches subdivision. As it relates to the Lewis property, Mountain View Loop comes south from County Road No. 20 through the Griffith property, crosses over the southern edge of the Lewises' unplatted property and then winds through the western part of Table Mountain Ranches, also owned by the Lewises, back to its second intersection with County Road No. 20.

[¶ 7] In 2003, Troy Griffith offered the Griffith property for sale. He and the Carnahans executed a purchase agreement for the property in April of 2003. As part of the agreement, Mr. Griffith agreed to petition the Board to re-plat the parcel to vacate the existing fourteen lots, create two lots instead, vacate the portion of Mountain View Loop running through the property and replace it with an eighty foot access and utility easement west of the buildings and the original

easement.[1] The Lewises objected to the re-plat on the grounds that it would close an existing county road and the proposed replacement easement was not the physical and legal equivalent of Mountain View Loop. The Board addressed the petition at two meetings and voted unanimously to deny it. The Board issued findings, conclusions and an order in July of 2003, stating that the re-plat would

> abridge or destroy the rights and privileges of other proprietors in Table Mountain Ranches, Fourth Filing, for the following reasons. First, because the replat vacates a statutorily dedicated public right-of-way and replaces it with an "access easement" which is not dedicated to the public and not designated as "Mountain View Loop". Second, because the proposed replat and corresponding vacation of Mountain View Loop deprives the other proprietors in Table Mountain Ranches, Fourth Filing, of their right and privilege to use an existing public, two track, passable, dirt road, which travels over, primarily, flat grass lands and replaces it with a completely undeveloped non-public "access easement."

Soon after the denial, the Carnahans went ahead and purchased the Griffiths' property.

[¶ 8] In 2007, the Carnahans built a fence with a locked gate on Mountain View Loop where it crosses from the unplatted portion of the Lewises' property onto their property. The Lewises then filed their complaint against the Carnahans seeking declaratory and injunctive relief establishing their right to use Mountain View Loop and prevent the Carnahans from blocking it. The Carnahans responded with their cross-claims for ejectment and trespass and third party complaint to quiet title to the easement in them as against the Lewises and Laramie County.

Laramie County moved to be dismissed from the action. The district court granted the County's motion.[2] The Carnahans and the Lewises filed cross motions for summary judgment.

[¶ 9] After a hearing, the district court dismissed the Lewises' nuisance claim, denied the Carnahans' motion for summary judgment on the declaratory judgment claim, held that Laramie County was not an indispensable party and set for trial the matter of whether the Lewises' claims were barred by the statute of limitations or laches. The district court requested additional briefing on the issue of whether the Griffiths' 1994 affidavit effectively vacated Mountain View Loop. After a hearing, the district court ruled that the affidavit was ineffective to vacate Mountain View Loop because it did not comply with Wyoming statutes. Having found that the vacation was not effective and the easement remained dedicated to public use, the district court dismissed the Carnahans' trespass claim. The remaining matters proceeded to trial. The district court subsequently issued findings of fact and conclusions of law holding the Lewises' claims were not barred by the statute of limitations or laches and they were entitled to declaratory relief. The district court denied the Carnahans' quiet title and ejectment claims. The Carnahans timely appealed.

## STANDARD OF REVIEW

[¶ 10] To the extent we have been asked to consider the district court's rulings on summary judgment, the following standards apply.

> Summary judgment motions are governed by W.R.C.P. 56(c):
>
> > The judgment sought shall be rendered forthwith if the pleadings, depositions,

---

1. Mr. Carnahan testified the petition to re-plat was filed in order to help the Carnahans obtain financing to purchase the property. Noel Griffith testified he filed the petition after he was called to a meeting with county representatives in 2002 and informed that the 1994 affidavit to vacate the plat was not done correctly and the County did not accept it.

2. The district court's order does not state the grounds for the dismissal. In its brief supporting its motion, the County asserted the Carnahans' quiet title and ejectment claims were barred by sovereign immunity and were in any event not cognizable because Wyo. Stat. Ann. §§ 34–12–106 through 111 provide the exclusive means for vacating a public easement. The County also argued equitable estoppel did not apply to governmental functions and it could not be estopped for unauthorized acts of its officers and employees.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings de novo, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Grynberg v. L & R Exploration Venture,* 2011 WY 134, ¶ 16, 261 P.3d 731, 736 (Wyo. 2011) (citations omitted).

[¶ 11] The following standards apply to our review of the district court's rulings following a bench trial:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

We review the district court's conclusions of law de novo.

*Kelly v. McNeel,* 2011 WY 79, ¶ 17, 250 P.3d 1105, 1109–1110 (Wyo.2011) (citation omitted).

## DISCUSSION

### 1. Timeliness of Appeal

[¶ 12] The Lewises contend this appeal is untimely because the district court has not ruled on their claim for injunctive relief. Because a ruling in their favor on that issue would result in dismissal of the

appeal and we would not consider the remaining issues at this juncture, we begin by considering whether the appeal is premature. The Carnahans assert it is not premature because the district court effectively denied the Lewises' claim for injunctive relief in its summary judgment decision letter. They base this assertion on the district court's conclusion that the Lewises lacked a sufficient possessory interest in Mountain View Loop to sustain a nuisance action for damages.

[¶ 13] In its summary judgment order, the district court expressly denied the Carnahans' summary judgment motion as to the Lewises' claims for declaratory and injunctive relief, finding that factual questions existed as to whether those claims were barred by the statute of limitations or the doctrine of laches. Had the district court intended to deny the Lewises' claim for injunctive relief, it would have granted the Carnahans' summary judgment motion on that claim just as it granted their summary judgment motion on the nuisance claim. Clearly, the district court did not deny the claim for injunctive relief, at least not at the summary judgment stage of the proceedings.

[¶ 14] After the trial, the district court granted the Lewises' request for declaratory relief. The declaratory relief the Lewises requested in their complaint was a declaration that the Carnahans did not have authority to block their use of Mountain View Loop by erecting a fence across it. Although it would have been preferable for the district court to have expressly ruled on the Lewises' request for injunctive relief as it did the request for declaratory relief, we conclude it is implicit in the district court's order that the fence must be removed. We, therefore, decline to dismiss the appeal and will proceed to address the issues presented.

### 2. Standing

[¶ 15] The Carnahans' assertion that the Lewises lack standing to pursue their claims is twofold. First, they contend the Lewises have no legally protectable interest at stake because Laramie County holds title to Mountain View Loop in trust for the public and no individual member of the public has a compa-

rable interest. Second, they assert the Lewises' only allegations of harm from being denied use of Mountain View Loop are speculative and based on conjecture.

[¶ 16] The Lewises filed their complaint pursuant to the Uniform Declaratory Judgment Act, Wyo. Stat. Ann. §§ 1–37–101 through 1–37–115 (LexisNexis 2011). Section 1–37–102 of the Act gives Wyoming courts the power to "declare rights, status and other legal relations." Section 1–37–103 provides:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose right, status or other legal relations are affected by the Wyoming constitution or by statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of right, status or other legal relations.

The Lewises sought to have the court construe their rights as owners of property located in the final plat for Table Mountain Ranches. We consider language used in a plat in accordance with contract interpretation principles. *Brumbaugh v. Mikelson Land Co.*, 2008 WY 66, ¶ 13, 185 P.3d 695, 701 (Wyo.2008). The Lewises' complaint, therefore, falls within the general scope of the declaratory judgment act.

[¶ 17] In order to bring a declaratory judgment action, the challenger must also be an "interested" person. *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 8, 79 P.3d 500, 505 (Wyo.2003). That is, the challenger must be involved in a justiciable controversy before declaratory relief will be granted. *Id.*, ¶ 9, 79 P.3d at 505. A justiciable controversy is defined as a controversy fit for judicial resolution. *Id.* The elements necessary to establish a justiciable controversy under the Uniform Declaratory Judgments Act are:

1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely polit-ical, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Id.*, ¶ 10, 79 P.3d at 505.

[¶ 18] The concept of justiciability encompasses several doctrines, including standing, ripeness, and mootness. *Id.*, ¶ 9, 79 P.3d at 505. The doctrine of standing the Carnahans place at issue here focuses on whether a litigant is properly situated to assert an issue for judicial determination. *Id.* A litigant has standing when he has a personal stake in the outcome of the controversy. *Id.* In the declaratory judgment context, the requirement that a litigant have a personal stake in the outcome of the controversy is intended to ensure that he or she is sufficiently interested in a case to present a justiciable controversy.

[¶ 19] With these principles in mind, we consider whether a justiciable controversy exists in this case and whether the Lewises were properly situated to assert it for judicial determination. The Lewises are landowners in the Table Mountain subdivision who claim that their right to travel to and from their property by way of an easement dedicated for public use has been impeded by the Carnahans' action of building a fence across the easement. The controversy is one upon which a judgment by a court may effectively operate. A judgment declaring that Mountain View Loop is, or is not, dedicated to the public use will operate to determine whether the Lewises are entitled to access their property by using the easement and whether the fence must go or stay. A judicial determination on those issues will act as a final judgment upon the parties' rights. The proceed-

ings are genuinely adverse in character—the Lewises allege that they asked the Carnahans to remove the fence and the Carnahans refused, thereby impeding their use of the easement to access their property.

[¶ 20] In asserting the Lewises do not have standing to maintain this action the Carnahans argue that they lack any "legally protectable" interest in the easement. They rely on *Owsley v. Robinson*, 2003 WY 33, 65 P.3d 374 (Wyo.2003) and *Ruby Drilling Co., Inc. v. Billingsly*, 660 P.2d 377 (Wyo.1983). In *Owsley*, the original owners of property filed a plat creating three separate tracts and identifying three easements: a utility easement (A) along the western side of tract 2; a road and utility easement (B) along the southern side of tracts 2 and 3; and a utility easement (C) along the eastern side of tract 3. *Id.*, ¶ 3, 65 P.3d at 375. They conveyed tracts 2 and 3 to a second individual by deed identifying easements A and B and granting an additional road and utility easement (D) on the southern boundary of the tracts on other property they owned. *Id.*, ¶ 4, 65 P.3d at 375. The second individual subsequently sold tract 3 to the Owsleys by deed identifying easements A, B and D as well as another road and utility easement (E) along the west side of tract 2. *Id.* Easement E covered the same portion of tract 2 encumbered by easement A. *Id.*, ¶ 5, 65 P.3d at 376. Later, the second individual sold tract 2 to the Robinsons. Upon discovering that the Owsleys were using easement E as a driveway, the Robinsons filed an action seeking a declaration as to the validity of easement E and quieting title to the easement in them. *Id.* The district court granted summary judgment for the Robinsons, holding that upon the original owners' recording of the plat, the public had a fee simple interest in the easements and the second owner had no authority to convey easement E to the Owsleys on land previously dedicated to the public. *Id.*

[¶ 21] This Court reversed the district court's ruling. Because easement A was a utility easement, we concluded it was not dedicated for use by the general public and was subject to the rules pertaining to non-public easements. *Id.*, ¶ 14, 65 P.3d at 377. We said:

An easement is an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property. Provided the easement does not clearly indicate it is exclusive to the dominant owner, the owner of the servient estate retains the right to use the easement area. The servient owner's use of the easement area must not, however, interfere with the dominant use as articulated in the easement language. In other words, both owners possess rights and each must as far as possible respect the other's use. *Id.*, ¶ 13, 65 P.3d at 377 (internal citations omitted). Because no evidence was presented that the Owsleys' use of easement E exceeded the scope of the easement or caused an undue burden to the Robinsons' servient estate, we concluded the Robinsons could not maintain their action for a judgment declaring the easement valid and quieting title to it in them.

[¶ 22] *Owsley* did not involve an easement dedicated to public use and is, therefore, factually distinguishable from the present case. We said in *Owsley* that the Robinsons could not maintain an action for a judgment declaring easement E to have been set aside for public use because it was a utility easement that had not been set aside for public use. However, we went on to say that if the easement had been set aside for public use, the public authority would hold title to it in trust for the public's benefit "and the Robinsons would have no individual possessory interest in the easements and thus no standing to contest the Owsley's use of Easement E." *Id.*, ¶ 16, 65 P.3d at 378 (citations omitted). It is this statement the Carnahans point to in arguing that the Lewises lacked standing to bring this action for a judgment declaring that the Carnahans did not have authority to block their use of Mountain View Loop and ordering removal of the fence. Because Laramie County holds title to it in trust for the public's benefit, they contend, the Lewises have no possessory interest in Mountain View Loop and no standing to contest the Carnahans' fence.

[¶ 23] We reiterate that *Owsley* is factually distinguishable from the present case because it did not involve an easement dedi-

cated to public use. Additionally, in making the statement the Carnahans rely on in *Owsley,* the Court cited *Ruby Drilling,* 660 P.2d 377. There, a drilling company installed a water line within the lines of a subdivision easement. The Billingslys, who owned lots in the subdivision, brought an action against the company for trespass. We concluded the easement was dedicated to the public. Therefore, the Billingslys had only the right to use the easement to access their property; they had no possessory interest sufficient to support a trespass action. We stated, however, that they "could have maintained an action for interference with their right to use the easement." *Id.* at 381.

[¶ 24] In filing this action, the Lewises sought a judgment declaring that they have the right to use Mountain View Loop to access their property and the Carnahans do not have the right to interfere with that use by erecting a fence across it. While the Lewises do not have the right, any more than the Billingslys did in *Ruby Drilling,* to exclusive possession of Mountain View Loop as required to maintain an action for trespass, they do have the right to seek a judgment declaring their right to use the public easement without interference by the Carnahans. Our statement in *Owsley* was made in the context of easements that were not set aside for public use. To the extent *Owsley* suggested in dicta that a landowner who has the right to use a road dedicated for public use does not have standing to seek a declaration as to his right, we now clarify that is not the law. The Lewises have a legally protectable interest in Mountain View Loop sufficient to maintain an action for a judgment declaring the respective rights of the parties with respect to it.

[¶ 25] The Carnahans also assert the Lewises did not show they have been or will be harmed by construction of the fence across Mountain View Loop because the fence only blocks access to the easement where it enters the Carnahans' property just south of County Road No. 20. They maintain the Lewises have access to all of their property even with the fence because Mountain View Loop intersects County Road No. 20 at two points and the fence only impedes use of the easement across the Carnahan property south of one of those intersections. The Carnahans submit the Lewises' contention that without two points of access they may be unable to develop their property in the future is speculative and more than speculative harm is required to establish standing. They assert the Lewises must show substantial, perceptible harm to have standing to pursue their claim.

[¶ 26] Addressing the concept of standing in the declaratory judgment context, we have said that a person must show a "perceptible," rather than a "speculative" harm from the action; a remote possibility of injury is not sufficient to confer standing. *Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶ 50, 226 P.3d 889, 911 (Wyo.2010). The Lewises own substantial property in a subdivision containing an easement dedicated to public use and platted to run through the subdivision from one access point to another. The Carnahans have constructed a fence, contrary to the dedication, blocking the Lewises' use of a portion of the easement to reach their property from one of the access points. We find these facts sufficient to demonstrate perceptible harm, and conclude the district court correctly determined the Lewises had standing to bring their claim for declaratory relief.

### 3.  *Statute of Limitations*

[¶ 27] The statute of limitations for a declaratory judgment action is four years. *Cox,* 79 P.3d at 509. Statutes of limitations are triggered in Wyoming when a plaintiff knows or has reason to know of the existence of a cause of action. *Lieberman v. Mossbrook,* 2009 WY 65, ¶ 22, 208 P.3d 1296, 1304 (Wyo.2009). That is, the statute begins to run when the claimant is chargeable with information which should lead him to believe he has a claim. *Id.* If the material facts are in dispute, the application of a statute of limitations is a mixed question of law and fact; otherwise, it is a question of law. *Id.*

[¶ 28] The Carnahans contend the Lewises missed the statute because they did not file their complaint within four years of the date they were charged with knowledge that Mountain View Loop had been vacated or

blocked. The Carnahans assert the Lewises had constructive notice that it had been vacated when they purchased land surrounded by the subdivision in 1994 because the affidavit of vacation was on record in the Laramie County Clerk's office and the word "vacated" was written on the plat.[3] They contend the Lewises also had actual knowledge that access to Mountain View Loop was impeded when the Griffiths built their home on the easement in 1994. The Carnahans further contend the Lewises knew their access was impeded in 1995 or 1996 when the Griffiths erected a gate and fence with a no trespassing sign across the width of Mountain View Loop. The Carnahans assert the Lewises were put on notice several more times by various events in 1999, 2002 and 2003.

[¶ 29] The district court concluded that genuine issues of material fact existed for trial as to when the Lewises discovered their claim. After the trial, the district court made the following findings:

(9) At some point in 1995 or 1996, Troy Griffith installed a gate across Mountain View Loop on the border of his and the Lewises' property, which he testified was meant to keep the public off his land. He also hung a "No Trespassing" sign on the gate. Nevertheless, Griffith allowed the Lewises and [another owner in the subdivision] to regularly pass through the unlocked gate and use the [Mountain View Loop]. Griffith testified he did so in part to be neighborly, and because the Lewises allowed him to graze his horses on their land. Griffith also testified he allowed anyone else who wanted to use [Mountain View Loop] to do so.

. . . .

(18) The Lewises occasionally used Mountain View Loop on the property after it was conveyed to the Carnahans, either by walking or driving all-terrain vehicles. There is no indication that the Carnahans prohibited access to the road prior to the summer of 2007.

(19) In 2007, the Carnahans installed a fence on their property which blocked access to [Mountain View Loop]. They assert that the fence was only erected in order to protect newly installed landscaping from livestock, and that it was temporary in nature. In any event, the Lewises brought this action in August 2007, and the Carnahans have responded that the road is no longer open to them or the public.

. . . .

(30). . . . The uncontroverted evidence presented to this Court was that the Lewises and others were allowed access to and actually used Mountain View Loop following the 1994 affidavit. In addition, while construction of the house, garage and septic system took place within the easement, [Mountain View Loop] is passable and one can drive entirely through Mountain View Loop without disturbing those structures. There is simply no evidence that the Lewises were required to being suit in order to enjoy use of the [easement].

(31) The first sign of a possible controversy may have started to arise in 2002 or 2003 when the County expressed its opinion that the subject tracts and [Mountain View Loop] were not effectively vacated. At the time, Troy Griffith attempted to replat the tracts ... with the hopes that such action would vacate the [easement]. The Board of Commissioner[s] rejected the application, finding that it would abridge upon the Lewises' and others' rights to use Mountain View Loop. The Carnahans chose to purchase the property despite the decision, and the Lewises continued to use and enjoy the [easement] without objection for several years.

(32) Given Troy Griffith's attempt to replat the tracts, the Board's subsequent decision, and the uncontested use of the [easement] before and after the decision, the Court cannot conclude that the Lewises' had reason to know that a suit was

---

**3.** The record suggests the word "vacated" was written on the original plat and then at least partially erased. It is not clear from the record who wrote the word "vacated" on the plat, when it was written or who erased it and when. The deputy county clerk testified that since she began working at the clerk's office in 2003, she and any customer who comes into the office have had access to the original plats but no one is permitted to take them out of the room where they are kept.

required in order to enforce their right to use Mountain View Loop. It was not clear that an actual and unsettled controversy had arisen until 2007 when the Carnahans erected a fence completely blocking access to the road. Because the suit was brought in August of the same year, it is not time barred.

[¶ 30] The district court's findings are supported by the record. Mr. and Mrs. Lewis testified that they used Mountain View Loop on a regular basis from the time they purchased the unplatted property in 1994 until the Carnahans blocked access by installing a fence and a gate in 2007. Mr. Lewis testified that from 2003 when the Carnahans bought the property until they installed the fence and gate in 2007, he and his wife continued to use Mountain View Loop without objection from the Carnahans. Although Troy Griffith put up a gate and a no trespassing sign in 1995 or 1996, the Lewises testified they continued to use Mountain View Loop without objection by driving through the gate when it was open or opening the unlocked gate when it was closed. Troy Griffith testified that he saw the Lewises using Mountain View Loop, they were welcome on his property and he never denied them access to his property. Noel Griffith testified that he never instructed the Lewises not to drive on Mountain View Loop. Mr. Carnahan also testified that he did not object to Mr. Lewis driving on the portion of Mountain View Loop on the Carnahans' property because he was trying to be neighborly.

[¶ 31] In addition to this evidence, Mr. Lewis testified that he was not told prior to purchasing the unplatted portion of his property in 1994 that Mountain View Loop had been vacated. Mr. Lewis testified that he did not look at the official plat recorded with the county when he purchased the property and was not aware of the attempt to vacate Mountain View Loop; he relied on the plat provided to him by the seller. He testified that when he purchased additional tracts in 1999, the developer assured him Mountain View Loop was intact. Mr. Lewis testified that he became aware in 2003 that the Griffiths were trying to re-plat their property to remove tract lines and Mountain View Loop.

He attended county meetings concerning the re-plat and was present when the Board of County Commissioners denied the re-plat. Based on the denial, Mr. Lewis believed the matter was settled. He testified that it was not until after the Carnahans installed the fence and locked gate in 2007 that his family was denied use of Mountain View Loop.

[¶ 32] Having examined all of the properly admissible evidence in the record, giving due regard to the district court's opportunity to assess witness credibility, and being mindful that our review does not entail re-weighing disputed evidence or substituting ourselves for the trial court, we conclude there is evidence to support the district court's factual findings. *Strong Constr., Inc. v. City of Torrington,* 2011 WY 82, ¶ 9, 255 P.3d 903, 907 (Wyo.2011). Our review of the evidence does not leave us with the definite and firm conviction that a mistake has been committed. *Id.* Rather, the evidence fully supports the district court's conclusion that the Lewises were not chargeable with information which should have lead them to believe they had a claim until 2007 when their access to and use of Mountain View Loop was obstructed by the Carnahans' erection of a fence with a locked gate. The statute of limitations did not begin to run until then and the Lewises filed their complaint the same year. Their claims were not barred by the statute of limitations.

### 4. Laches

[¶ 33] The Carnahans also assert the Lewises' claims are barred under the equitable doctrine of laches.

"Laches is defined as such delay in enforcing one's rights that it works to the disadvantage of another." *Dorsett v. Moore,* 2003 WY 7, ¶ 9, 61 P.3d 1221, 1224 (Wyo. 2003). The defense of laches is based in equity and whether it applies in a given case depends upon the circumstances. *Hammond v. Hammond,* 14 P.3d 199, 201 (Wyo.2000); *Moncrief v. Sohio Petroleum Co.,* 775 P.2d 1021, 1024–25 (Wyo.1989). There are two elements which must be shown to establish the defense of laches-inexcusable delay in the assertion of a right and injury, prejudice or disadvantage

to the defendants. *Moncrief,* 775 P.2d at 1025.

*Ultra Resources,* ¶ 123, 226 P.3d 889 at 929.

[¶ 34] The district court concluded laches was not a defense to the Lewises' claims for two reasons. First, the actual controversy was not fully developed until 2007 and so there was no inexcusable delay in bringing the action. Second, the Carnahans were made fully aware before they purchased the Griffith property that Mountain View Loop may not have been properly vacated in 1994 and that the Board of County Commissioners had denied the application for re-plat in 2003. Therefore, the district court concluded, the Carnahans could not rely on equity to contend that their injuries resulted from the Lewises' failure to bring their suit earlier.

[¶ 35] As we have discussed above, the district court's findings and conclusions that the Lewises did not have reason to bring this action until 2007 and, therefore, did not delay in bringing it are fully supported by the record. Additionally, the record supports the conclusion that the Carnahans knew Mountain View Loop had not been vacated and purchased the property anyway. Noel Griffith testified unequivocally that he told the Carnahans before he attempted to have the property re-platted that the 1994 vacation was invalid. He also testified that he told the Carnahans he would work with them to get Mountain View Loop relocated. He testified that he offered to contribute $5,000 toward the effort. He testified that the Carnahans purchased the property knowing that Mountain View Loop had not been vacated and he had not been successful in getting it relocated. In light of this testimony, the Carnahans failed to prove that their injuries were caused by any action or inaction by the Lewises.

#### 5. *Affidavit to Vacate Plat*

[¶ 36] As reflected in the facts set out above, the Griffiths attempted to vacate the plat lines and Mountain View Loop on their portion of the subdivision by filing an affidavit for vacation which was recorded by Laramie County on March 2, 1994. The affidavit was signed by Noel and Colleen Ann Griffith.

[¶ 37] Wyo. Stat. Ann. § 34–12–102 (LexisNexis 2011) provides in relevant part:

> Every original owner or proprietor of any tract or parcel of land, who has heretofore subdivided, or shall hereafter subdivide the same into three (3) or more parts for the purpose of laying out any ... suburban lots, shall cause a plat of such subdivision ... to be made....

Wyo. Stat. Ann. § 34–12–103 (LexisNexis 2011) provides:

> Every such plat ... shall be signed by the owners and proprietors, and shall be duly acknowledged before some officer authorized to take the acknowledgement of deeds. The plat shall meet the approval of the board of county commissioners if it is of land situated without the boundaries of any city or town.... When thus executed, acknowledged and approved, said plat shall be filed for record and recorded in the office of the clerk of the proper county[.]

Wyo. Stat. Ann. § 34–12–106 (LexisNexis 2011), governing the vacation of plats, provides:

> *Any such plat may be vacated by the proprietors thereof at any time before the sale of any lots therein, by a written instrument declaring the same to be vacated, duly executed, acknowledged or proved and recorded in the same office with the plat to be vacated,* and the execution and recording of such writing shall operate to destroy the force and effect of the recording of the plat so vacated, and to divest all public rights in the streets, alleys, commons and public grounds laid out or described in such plat, and *in case where any lots have been sold, the plat may be vacated as herein provided, by all the owners of lots in such plat joining in the execution of the writing aforesaid.*

[¶ 38] In the present case, the original owner or proprietor of Table Mountain Ranches had sold lots within the subdivision at the time the Griffiths sought to vacate the plat. Pursuant to § 34–12–106, therefore, in order to vacate the plat, all owners of lots in the plat had to join in a written instrument, duly executed, acknowledged and recorded in

the Laramie County Clerk's office, declaring the plat to be vacated. It is undisputed that the Griffiths were the only owners of lots in the subdivision to execute the affidavit of vacation; no other owners of lots in the plat joined in the affidavit. Consequently, the effort to vacate the plat was not done in accordance with Wyoming law.

[¶ 39] This Court has established the principle that, once a road becomes a public road, the public has a vested right to use it, and it "cannot be vacated ... without compliance with the appropriate statutes." *Sare v. Sheridan County Bd. of County Comm'rs*, 784 P.2d 593, 595 (Wyo.1989), quoting *Sheridan County v. Spiro*, 697 P.2d 290, 303 (Wyo.1985) and citing *Bd. of County Comm'rs, Carbon County v. White*, 547 P.2d 1195 (Wyo.1976). There is no question from the language contained in the original plat that the owner intended to dedicate Mountain View Loop for public use. Consequently, the Griffiths could not vacate it without following the statutory procedures. They did not follow those procedures; therefore, the attempt to vacate Mountain View Loop was not effective.

[¶ 40] Citing *Moorcroft v. Lang*, 779 P.2d 1180, 1184 (Wyo.1989), the Carnahans assert that after an original owner or proprietor sells lots in a subdivision, the decision to vacate a street in the subdivision belongs to the owners of lots abutting the street. Because the only lots sold before the Griffiths vacated the plat did not abut the portion of Mountain View Loop they attempted to vacate, and only the Griffiths' lots abutted that portion of the easement, the Carnahans maintain the Griffiths acted in accordance with the statutes.

[¶ 41] The issue in *Moorcroft* was whether a mineral interest underlying a street dedicated to public use transferred with the sale of lots adjoining the street to the lot owners, or whether the original owner-developer retained the mineral interest. A majority of the court held that the mineral interest remained with the owner-developer. In reaching that result, the Court addressed generally the interests created when an owner-developer dedicates a street for public use and vacates the street before any lots are sold, as compared to when a developer sells lots and vacation is sought after the sale. In the first instance, it is clearly the developer who has the authority to vacate the street. In the second instance, the authority to vacate the street transfers from the developer to the new owners.

[¶ 42] In the course of that discussion, the Court said in dicta that upon the sale of lots within a plat "the decision to vacate [a street] belongs to the abutting lot owners." This statement is correct to the extent that it means upon the sale of lots in a plat, the developer no longer has the authority to vacate; that authority belongs to the lot owners. The statement is incorrect to the extent it suggests owners of lots abutting a portion of a plat dedicated to public use can unilaterally vacate that portion of the plat. The express language of § 34–12–106 provides that, after lots have been sold, a plat may be vacated "by *all owners of lots in such plat* joining" in a written, duly executed and acknowledged statement and recording it in the office where the plat is recorded. The Griffiths did not have the authority to vacate any portion of Mountain View Loop without all owners of lots in the plat joining in the written instrument recorded in the Laramie County Clerk's office.

[¶ 43] The Carnahans also cite Wyo. Stat. Ann. § 34–12–108 (LexisNexis 2011) which provides for partial vacation of a plat as follows:

> Any part of a plat may be vacated under the provisions, and subject to the conditions of this act [§§ 34–12–101 through 34–12–104, 34–12–106 through 34–12–115]; provided, such vacating does not abridge or destroy any of the rights and privileges of other proprietors in said plat[.]

They assert the Griffiths' attempt to vacate Mountain View Loop did not abridge or destroy any of the rights and privileges of other owners because the vacation did not affect access to other lots. Presumably, the Carnahans mean that no rights were affected because the vacation did not involve either eastern access from County Road No. 20 to lots 221 and 222 or western access from the

county road to the remaining lots in the subdivision.

[¶ 44] In addressing the Carnahans' claims that the Lewises lacked standing to pursue this action because they could not demonstrate perceptible harm, we concluded the Lewises showed sufficient harm. Our resolution of that issue applies equally in the context of the Carnahans' assertion that vacation of the portion of Mountain View Loop on their property did not affect the Lewises' rights. As we have said, the Lewises own property in a subdivision containing an easement dedicated to public use and platted to run through the subdivision from one access point to another. The Carnahans constructed a fence, contrary to the dedication, blocking the Lewises' use of a portion of the easement to get to and from their property from one of the access points. Clearly, the 1994 Affidavit to Vacate the easement affected their rights. The district court correctly concluded that the 1994 Affidavit did not comply with Wyoming law and was not effective to vacate Mountain View Loop. Our resolution of this issue makes it unnecessary to address the Carnahans' trespass claim.

## CONCLUSION

[¶ 45] This action resulted from an unfortunate, to say the least, set of circumstances. Laramie County played a direct role in allowing a private landowner to build a home on a public easement. Despite the seeming inequities, however, the law does not provide a means to rectify the situation. It would be this Court's hope that the parties, together with the County, could work together to resolve this matter by relocating Mountain View Loop a reasonable distance from the Carnahans' home to allow them at least to sell the property if it is not acceptable to them to live there with the road crossing their property. While it is difficult to tell without actually seeing the property, it appears from some of the trial exhibits that where the current road jogs to the east and runs into the residence, it could instead head southeast across what appears to be prairie and rejoin the existing road where it turns west toward the Lewises' property.

[¶ 46] The Lewises had standing to maintain an action for declaratory judgment and injunctive relief. Their claims were not barred by the statute of limitations or the equitable doctrine of laches. The Griffiths' 1994 Affidavit did not comply with Wyoming law and was not effective, therefore, to vacate the easement dedicated to public use through the subdivision. The Lewises have the right to use Mountain View Loop, including the portion that crosses the Carnahans' property. The Carnahans are permanently enjoined from obstructing access along Mountain View Loop.

[¶ 47] The orders and judgment of the district court are affirmed.