# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 56

APRIL TERM, A.D. 2017

*May 16, 2017*

THE TAVERN, LLC, and SALL, LLC,

Appellants
(Plaintiffs),

v.

THE TOWN OF ALPINE,
WYOMING, and NELSON
ENGINEERING, a Wyoming
Corporation,

Appellees
(Defendants).

S-16-0185

*Appeal from the District Court of Lincoln County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellants:*
    Gary L. Shockey, Attorney at Law, Jackson, Wyoming

*Representing Appellee The Town of Alpine:*
    John D. Bowers, Bowers Law Firm, PC, Afton, Wyoming

*Representing Appellee Nelson Engineering:*
    Lance E. Shurtleff, Esq., Hall & Evans, LLC, Laramie, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellants The Tavern, LLC and SALL, LLC sued the town of Alpine, asserting several claims stemming from Alpine's financing and construction of a new sewage treatment facility.  Appellants challenged the legality of the indebtedness Alpine incurred for the project, alleging that the loans exceeded the constitutional and statutory debt limitations imposed upon municipalities.   They also asserted that Alpine was inappropriately attempting to coerce them to connect to the new waste facility and to abandon their functional septic systems.

[¶2]    A few years later, as the initial case inched on, Appellants filed another action against Alpine and Nelson Engineering.  Appellants claimed that Alpine and Nelson committed the torts of abuse of process, civil extortion, and civil conspiracy by making false reports to the Wyoming Department of Environmental Quality that Appellants had violated the agency's rules and regulations when they upgraded their septic systems.

[¶3]    The actions were consolidated, and the parties filed various motions on the respective claims.[1]   The district court granted Alpine's motion to dismiss all claims against the town.  It also granted Nelson's motion for summary judgment on the claims against the engineering firm.

[¶4]    Appellants now present a number of issues on appeal.  For the reasons set forth below, we reverse in part, affirm in part, and remand.

## ISSUES

[¶5]    Appellants present many issues, some of which overlap, but we discern the following questions to be distinct and dispositive:

1.    Did the district court err in granting Alpine's motion to dismiss Appellants' claim for declaratory judgment when it determined they had no standing to seek a declaration that Alpine's loans for the new sewage[2] treatment facility exceeded the town's constitutional and statutory indebtedness limits?

---

[1] Appellants' motion for partial summary judgment on the claim for declaratory judgment was denied, which is irrelevant to this appeal in light of the district court's grant of Alpine's motion to dismiss. Furthermore, the denial of a summary judgment motion is generally not subject to appellate review, with two limited exceptions that do not apply in this case. *See McLean v. Hyland Enterprises, Inc.,* 2001 WY 111, ¶ 17, 34 P.3d 1262, 1267 (Wyo. 2001); Tyler J. Garrett*, Anatomy of A Wyoming Appeal: A Practitioner's Guide for Civil Cases*, 16 Wyo. L. Rev. 139, 144 (2016).

[2] The terms "sewage" and "sewerage" were both used by the parties, and both appear in the statutes and the constitution.   We consider them to be synonyms for all practical purposes and use them interchangeably.

1

2. Did the district court err in granting Alpine's motion to dismiss Appellants' claim for injunctive relief to stop Alpine from enforcing assessments and exactions for the new sewerage system on Appellants?

3. Did the district court err in granting Alpine's motion to dismiss Appellants' claim of inverse condemnation?

4. Did the district court err in granting Alpine's motion to dismiss Appellants' claims for abuse of process, civil extortion, and civil conspiracy because those claims are barred by the Wyoming Governmental Claims Act?

5. Did the district court err in granting Nelson's motion for summary judgment on Appellants' claim for abuse of process?

6. Did the district court err in granting Nelson's motion for summary judgment on Appellant's claim for civil conspiracy?

**FACTS**

[¶6] In 2005, Alpine commissioned Nelson Engineering to conduct a feasibility study to evaluate options to modify the town's existing sewer and water treatment plant, or in the alternative, to construct a new sewer treatment plant. After studying the situation, Nelson recommended that Alpine build a new sewer plant. Alpine adopted Nelson's recommendation and the "Alpine Wastewater Treatment Facilities Improvement Project" began.

[¶7] Alpine passed resolutions authorizing application to the Wyoming State Loan and Investment Board for loans to be used as partial funding for the construction of the new sewage facility. The town then entered into loan agreements and executed promissory notes with the WSLIB. Alpine borrowed roughly $3,843,530 from the State of Wyoming at a 2.5% interest rate for a twenty-year term.

[¶8] Appellants own and operate a recreational vehicle campground and tavern in Alpine. Their operations have not required hookups to Alpine's sewer system because their property has several septic tanks. The prospect of being required to hook up to the new sewage facility and therefore being obligated to pay associated sewer connection fees and usage rates led them to sue Alpine.

[¶9] In their initial action, CV-2009-176, Appellants brought four claims. They sought a declaratory judgment that Alpine's indebtedness for the project was illegal because the loans exceeded the constitutional and statutory debt limitations imposed upon

municipalities.[3] The second claim sought an injunction to prevent Alpine from compelling them to connect to the new waste facility and from forcing them to abandon their functional septic systems. The third claim requested a writ of mandamus and/or injunctive relief requiring Alpine to provide reasoning regarding its denial of a de-annexation petition Appellants had filed. In their fourth claim, Appellants asserted a taking of their property by inverse condemnation.

[¶10] Sometime after the complaint in CV-2009-176 was filed, Alpine's attorney[4] sent an email to Appellants' attorney stating that if they continued with the lawsuit, the town would report them to the DEQ for alleged violations of the agency's rules and regulations for improvements to Appellants' septic system. Appellants continued with their case. A few weeks later, an engineer employed by Nelson, Leon Kjellgren, sent a letter alleging that their septic systems violated agency regulations to the DEQ. Mr. Kjellgren stated in his letter that he was acting on behalf of and representing Alpine.

[¶11] Because of Mr. Kjellgren's letter, the DEQ issued an order requiring Appellants to obtain permits from that agency. Appellants argued, however, that Alpine had already inspected, approved, and issued permits for the improvements to their septic system. Appellants appealed the order to the Wyoming Environmental Quality Council, and while that appeal was pending, the parties reached an agreement that resulted in DEQ issuing a permit for the RV park system.

[¶12] As a result of the episode with the DEQ, Appellants filed a second action, CV-2011-132, against Alpine and Nelson. In that complaint, Appellants asserted three claims: (1) abuse of process; (2) civil extortion; and (3) civil conspiracy. The initial case was stalled while Appellants worked everything out with DEQ, and so when Appellants filed their second action, the cases were consolidated.

[¶13] The parties then filed various motions. Alpine moved to dismiss all the claims against it pursuant to W.R.C.P. 12(b)(6).[5] Nelson moved for summary judgment

---

[3] Appellants contend that Wyoming Constitution Art. 16, § 5 and Wyo. Stat. Ann. §§ 15-1-103 and 15-7-109 limit Alpine's authority to borrow more than 8% of its assessed valuation. They contend that Alpine exceeded that limit with the loans for the new sewage treatment system. They argue that Alpine should have held a bond election to obtain the electorate's approval for the project. Alpine argues that the plant and facilities constructed was a "water works" project which is exempt from the debt limitations applicable to sewage treatment facilities under Wyo. Stat. Ann. § 15-7-109. Because we resolve this appeal largely on the question of standing, and because we decline to review denials of motions for summary judgment (*see* n.1 *supra*), we do not analyze the constitutional and statutory provisions argued by the parties.

[4] That was a different attorney than the lawyer representing Alpine in this appeal.

[5] As of February 2, 2017, W.R.C.P. 12(b)(6) provides:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.

pursuant to W.R.C.P. 56 on all claims against them in CV-2011-132, in which Alpine joined. Appellants moved for partial summary judgment on the declaratory judgment claim against Alpine, asking the court to declare that the loans it had obtained for the project violated its constitutional and statutory debt limits. The district court provided the parties ample time to fully brief and supplement their arguments, and held a hearing on all motions. Following the hearing, the district court issued three decision letters on the respective motions.

[¶14] The first was filed March 7, 2016 and titled "*Decision Regarding Defendant Town of Alpine's Second Motion to Dismiss*," and it was later incorporated verbatim into the district court's "*Order Granting In Part and Denying In Part The Town of Alpine's Second Motion to Dismiss*." The court dismissed Appellants' claims in CV-2009-176 for failure to state a claim upon which relief can be granted. Specifically, it determined that they lacked standing to bring a declaratory judgment action challenging the indebtedness incurred for the sewer treatment project, and that therefore it did not have jurisdiction to act upon that claim. It also dismissed the second claim, which asked for injunctive relief, for failure to state a claim because the complaint did not demonstrate any irreparable harm. Regarding the third claim, the district court determined that as a matter of law the remedy of mandamus was not applicable because Alpine did not owe a clear duty to Appellants regarding their petition for de-annexation. The fourth claim, inverse condemnation, was dismissed because the complaint did not assert any facts that would entitle Appellants to such relief, and also because they did not comply with statutory requirements for inverse condemnation.

[¶15] In the same decision letter/order, the district court also dealt with the claims against Alpine in CV-2011-132. It granted Alpine's motion to dismiss and dismissed the three claims asserted in that action. Specifically, it determined that the claims for abuse of process, civil extortion, and civil conspiracy were barred by the Wyoming Governmental Claims Act.

[¶16] The second March 7, 2016 decision letter, which dealt with Nelson's motion for summary judgment, in which Alpine had joined, is titled "*Decision Regarding Defendants' Motion for Summary Judgment (Re: Complaint in Civil No. CV-2001-132-DC)*," and it was later incorporated verbatim into the "*Order Granting Summary Judgment in Favor of Defendants in Civil Action No. CV-2011-132-DC*." The district court concluded that there were no genuine issues of material fact concerning the claims of abuse of process, civil extortion, and civil conspiracy, and that therefore Nelson and Alpine both were entitled to judgment as a matter of law on that basis.

---

But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

4

[¶17]  The third decision letter, also filed March 7, 2016, is titled "*Decision Regarding Plaintiff's Motion For Partial Summary Judgment (Re: Complaint in Civil No. CV-2009-176-DC)*," and it was later incorporated verbatim in "*Order Denying Plaintiff's Motion For Partial Summary Judgment.*"  Although the district court dismissed Appellants' claim for declaratory judgment for lack of standing, pursuant to Alpine's motion to dismiss, it also denied Appellants' motion for partial summary judgment on the same claim.  It determined that Appellants failed to make the requisite *prima facie* showing that no genuine issues of material fact existed as to whether the system in question was a sewage or a water works system under the constitution and statutes.  The previous ruling on standing would have been sufficient to dispose of the claims made in this motion – if Appellants had no standing, questions of fact became irrelevant.

[¶18]  The combination of the orders granting Alpine's and Nelson's respective motions effectively dismissed all of Appellants' claims.  Appellants timely perfected this appeal.

## DISCUSSION

[¶19]  We will first address the district court's dismissal of Appellants' claims against Alpine for failing to state a claim upon which relief could be granted.  We will then attend to the claims against Nelson, which the district court dismissed by summary judgment.

### *Issues Relating to Alpine's Motion to Dismiss*

[¶20]  The claims against Alpine were dismissed pursuant to W.R.C.P. 12(b)(6), a decision that we review *de novo*. *Elworthy v. First Tennessee Bank*, 2017 WY 33, ¶ 20, 391 P.3d 1113, 1119 (Wyo. 2017).  We have explained that while dismissal is a drastic remedy that should be used sparingly, a motion to dismiss is indeed the proper method for testing the legal sufficiency of the allegations. *Bush Land Dev. Co. v. Crook Cty. Weed & Pest Control Dist.*, 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017).  We will sustain the dismissal when the face of the complaint confirms that the plaintiff is not entitled to relief. *Id.*

[¶21]  In reviewing the grant of Alpine's Rule 12(b)(6) motion to dismiss, we consider the facts averred to be true and view them in the light most favorable to Appellants. *Elworthy*, ¶ 20, 391 P.3d at 1119.  That said, the lens through which we look and our liberal construction of pleadings "does not excuse an omission of that which is material and necessary in order to entitle one to relief." *Id.* (quoting *Stroth v. North Lincoln Cnty. Hosp. Dist.*, 2014 WY 81, ¶ 6, 327 P.3d 121, 125 (Wyo. 2014)).  Ultimately, we will

affirm the district court's dismissal when, from the face of the complaint, it is certain that Appellants cannot assert any fact which would entitle them to relief. *Id.*[6]

### 1. Declaratory Judgment (CV-2009-176)

[¶22] In determining that Appellants did not have standing to bring their declaratory judgment claims, the district court concluded that Appellants failed to establish the first two elements of what is commonly referred to as the *Brimmer* test. *See* ¶ 25 *infra*. First, it found that Appellants failed to demonstrate any tangible interest that had been harmed by Alpine because their claims on damages were speculative. It further found that no alleged harm could be remedied, because the enactments for sewer connection and associated fees/rates were not related to the loans for the new sewer facility. Accordingly, because the district court determined Appellants did not have standing, it dismissed the claim because there was no subject matter jurisdiction.

[¶23] Appellants contend that the court erred when it determined they had no standing to seek a declaration that Alpine's loans for the wastewater treatment facilities improvement project exceeded the town's constitutional and statutory limitations for indebtedness. They argue that they adequately alleged that Alpine's actions create an immediate and future threat to the economic viability of their business and negatively impact their property value. Specifically, they allege they pled that their property and business is negatively affected by the municipal enactments relating to connection and usage fees of the new sewage system and the forced decommissioning of their septic systems.

[¶24] The Uniform Declaratory Judgment Act provides in pertinent part that "[a]ny person . . . whose rights, status or other legal relations are affected by the Wyoming constitution or by statute, municipal ordinance . . . may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." Wyo. Stat. Ann. § 1-37-103 (LexisNexis 2015). Appellants sought to have the court construe their rights as owners of property within Alpine to the extent they will be affected by the municipal ordinances relating to the new sewage facility, along with the related enactments for connection and usage fees of the new sewage system. Appellants' claim falls within the general scope of the Declaratory Judgment Act.

[¶25] That does not end the analysis, however. In order to legitimately maintain a declaratory judgment action, Appellants must also be "interested" entities. *Carnahan v. Lewis*, 2012 WY 45, ¶ 17, 273 P.3d 1065, 1071 (Wyo. 2012) (citing *Cox v. City of*

---

[6] The parties submitted materials outside the complaint, which might have allowed or required conversion of the Rule 12(b)(6) motion to a W.R.C.P. 56 motion for summary judgment. The district court was not asked to convert the motion to dismiss to a summary judgment motion, and it didn't do so. We find no indication that the district court considered anything but the allegations of the complaint, and the parties have not complained about that below on appeal. We therefore review this issue by the stated standard.

*Cheyenne*, 2003 WY 146, ¶ 8, 79 P.3d 500, 505 (Wyo. 2003)). "That is, the challenger must be involved in a justiciable controversy before declaratory relief will be granted." *Carnahan*, ¶ 17, 273 P.3d at 1071 (citing *Cox*, ¶ 9, 79 P.3d at 505). Put plainly, a justiciable controversy is a controversy fit for judicial resolution. *Id.* There are four elements that must be satisfied under the *Brimmer* test to establish a justiciable controversy pursuant to the Uniform Declaratory Judgments Act, which are:

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Carnahan,* ¶ 17, 273 P.3d at 1071 (quoting *Cox*, ¶ 10, 79 P.3d at 505); *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974). "These requirements can, however, be relaxed in cases involving matters of great public interest or importance." *Vill. Rd. Coal. v. Teton Cty. Hous. Auth.*, 2013 WY 38, ¶ 13, 298 P.3d 163, 168 (Wyo. 2013) (citations and internal quotation marks omitted).

[¶26] Justiciability encompasses several doctrines, including standing, ripeness, and mootness. *Carnahan*, ¶ 18, 273 P.3d at 1071. Standing focuses on a litigant being properly situated to assert an issue for judicial determination. *Id.* Thus, "[a] litigant has standing when he has a personal stake in the outcome of the controversy." *Id.* "In the declaratory judgment context, the requirement that a litigant have a personal stake in the outcome of the controversy is intended to ensure that he or she is sufficiently interested in a case to present a justiciable controversy." *Id.*

[¶27] We disagree with the district court's conclusion that the Appellants failed to meet the first two elements of the *Brimmer* test. Rather, we find their complaint sufficiently alleges that they have a tangible interest which has been harmed and that a judicial decision in their favor will effectively remedy the harm.

[¶28] With the case in this posture, we must focus on what Appellants allege in terms of a tangible interest and the utility of a judicial ruling. What we find persuades us that Appellants have alleged enough to maintain their claim for declaratory judgment. Their complaint states, for example:

> 10. [T]he town of Alpine adopted recommendations of the Feasibility Study to construct a completely new sewer treatment plant and provide for phased implementation of new collection systems in the Town of Alpine.
>
> * * *
>
> 12. Funding for the project was also secured by the Town of Alpine through loans and grants from programs available through governmental sources. A mineral royalty grant in the approximate amount of $3.6 million dollars was secured. A loan through the State of Wyoming, designated in documents as the SRF loan, in the approximate amount of $4.123 million was also secured. Projections indicated that yearly repayment of that loan, over a 20 year amortization period, including principal and interest would amount to $264,478.00 per year. This loan and repayment schedule were, as stated, loan obligations undertaken by the Town of Alpine and were not bonding obligations. The total projected repayment cost of the loan obligation, over the period of 20 years, was and is $5,289,560.00.
>
> 13. Plaintiffs are the owners of real estate and operators of businesses within the Town of Alpine, Wyoming. The two principal business concerns involved are the operation of a restaurant and tavern, as well as operation of an RV campground. Pursuant to the ordinances cited and other actions by the Town of Alpine, Wyoming, assessments for connection and use of the new sewerage system, if enforced, will make Plaintiffs' businesses economically non-viable and irreparably diminish the value of Plaintiffs' real estate.

8

14.    The principal features of the actions of the Town of Alpine that will cause damage to Plaintiffs' property and business interests are proposed assessments necessitated by the debt burden taken on by the Town of Alpine in connection with the loan described above.  In summary, the Town of Alpine has enacted a schedule on initial fees which would be economically devastating to Plaintiffs' business and property interests.  Specific amounts and monetary effects on Plaintiffs' business and property interests are detailed later in this Complaint.

15.    In addition to fees to hook up to the new system, the Town of Alpine has enacted measures, which, if enforced, would force Plaintiffs and others similarly situated to abandon, at their own expense, functional and safe septic and leach field systems.  The Town of Alpine, without any scientific support, technical evidence, or other data to justify its decision, has decreed that any septic/leach system more than 15 years old must be immediately abandoned and reclaimed.  Compliance with existing Department of Environmental Quality Standards for the State of Wyoming to accomplish such an abandonment would add further, substantial, economic burdens to the Plaintiffs as detailed later in this Complaint.  Additionally, the Town of Alpine enacted a provision which mandated no further approval of septic/leach systems within its boundaries; the Town of Alpine has wrongly refused to approve continuing use of some of Plaintiffs' facilities in this respect.  The underlying reason for declaring septic/leach systems must be abandoned is to force persons and entities such as Plaintiffs to participate in the assessment program which is the subject of this Complaint.

[¶29] The complaint goes on to allege the damages that would be caused by the assessments and exactions imposed by Alpine relating to its new sewage system, including the following:

- Initial hookup fees requiring payment based on average household usages (otherwise referred to as equivalent residential unit), which in the case of Appellants' campground would result in assessments of approximately $85,000.

- Ready to serve fees to be paid in advance of collection system sewerage.

9

- Ordinance requiring any septic system over fifteen years old to be decommissioned and properly abandoned at property owner's expense. Appellants contend the cost to take such action on their property would be well over $100,000.

- Pipe to connect Alpine's new system at property owner's expense.

[¶30] Appellants' allegations that they own property adversely affected by Alpine's new sewage treatment facility and related assessments/exactions are sufficient to plead a tangible interest. Thus, they have satisfied the first *Brimmer* element. *See William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 26, 206 P.3d 722, 731 (Wyo. 2009) (determining that the plaintiffs sufficiently alleged that they had an interest which had been harmed).

[¶31] To meet the second element of the *Brimmer* test, Appellants must demonstrate that a court's decision will have some practical effect upon the litigants. *Id.* More specifically, they must allege facts that link Alpine's failures to follow its constitutional and statutory duties and the remedy they seek will remedy the impacts on their property. They have. The complaint requests relief that will redress or prevent the damage they claim they have incurred or will incur in the future. Appellants ask that the court enter a judgment declaring Alpine's loans from the State of Wyoming for the new sewage treatment facility are unconstitutional and violate applicable statutes. If that is the case, then the related ordinances and exactions mentioned above, *see* ¶¶ 28-29 *supra*, would necessarily be implicated as well. The second element has been met.

[¶32] Regarding the third and fourth elements, a review of the complaint reveals that Appellants have adequately pled that a judicial determination will have the force and effect of a final judgment in law upon the rights of Appellants, and that the parties are genuinely adverse. *See Dir. of Office of State Lands & Invs. v. Merbanco, Inc.*, 2003 WY 73, ¶¶ 12-21, 70 P.3d 241, 247-49 (Wyo. 2003); *contra Vill. Rd. Coal.*, ¶¶ 14-16, 298 P.3d at 168-69. The complaint's allegations, taken in the light most favorable to them, plead that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the declaratory judgment.

[¶33] We have explained that the concept of standing in the declaratory judgment context requires a person to "show a 'perceptible,' rather than a 'speculative' harm from the action; a remote possibility of injury is not sufficient to confer standing." *Carnahan*, ¶ 26, 273 P.3d at 1073 (citing *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 50, 226 P.3d 889, 911 (Wyo. 2010)). Here, Appellants claim to own property with a septic system that allows them not to be connected to Alpine's sewer system. Now, because of Alpine's ordinances and enactments related to the new sewage facility, they plead that they will be required to decommission their septic system (allegedly an expensive task) and connect to the new sewer facility and pay related connection fees and utility costs.

We find the allegations of the complaint sufficient to plead perceptible harm, and we therefore conclude the district court erred in determining that Appellants had not pled facts sufficient to establish standing to bring their claim for declaratory relief.

[¶34] We must, therefore, reverse the district court's ruling that Appellants failed to plead standing to assert their first claim for a declaratory judgment.[7] Of course, the truth of the allegations of the complaint can be tested by summary judgment or at trial on remand. Alpine's choice to challenge standing on a motion to dismiss greatly limits the scope of our review at this point.

### 2. Injunctive Relief (CV-2009-176)

[¶35] Alpine also moved to dismiss Appellants' claim for injunctive relief from the town's enactments regarding connection and usage fees for the new sewer system. Alpine asserted that the claim failed to state a claim upon which relief can be granted, which required dismissal under W.R.C.P. 12(b)(6). The district court agreed, reasoning that Alpine was within its statutory right to construct and operate the sewerage system pursuant to Wyo. Stat. Ann. §§ 15-1-103(a)(ix), (xxx), and (xxxi). Further, it determined that the complaint did not demonstrate that Appellants' harm was irreparable and that no adequate remedy at law exists.

[¶36] We have explained that although an action for injunctive relief is authorized by statute and rule, Wyo. Stat. Ann §§ 1-28-101 *et seq*. and W.R.C.P. 65, it is by origin a request for equitable relief. *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 10, 215 P.3d 1054, 1058 (Wyo. 2009). A court will issue an injunction when the threatened harm is irreparable and there is no adequate remedy at law. *Id.* An injury is irreparable when it is unique and money as future compensation cannot atone. *Id.*

[¶37] The statute the district court relied upon to dismiss the injunctive relief claim states as follows:

> (a) Any city or town borrowing money or receiving grants and improving, constructing or acquiring and improving a sewerage system, shall collect a charge from the users of the system at a rate sufficient to:
>
> (i) Pay the cost of operating and maintaining the system;
> (ii) Provide an adequate depreciation fund;

---

[7] As we have already suggested above, the ultimate issue of the legality of the loans used to construct the new Alpine sewage facility is not before us and nothing in this opinion should be taken by the parties or the district court as a portent of how we might rule if the issue is squarely presented in the future.

(iii) Pay the principal and interest on the bonds issued; and

(iv) Repay grants.

(b) Any city or town owning and operating a sewerage system constructed or acquired under the provisions of any law may provide by ordinance that the users of the system pay a service rate sufficient to pay the cost of operating and maintaining the system and to provide an adequate depreciation fund.

(c) Any city or town may fix special rates as provided in W.S. 15-7-407.

Wyo. Stat. Ann. § 15-7-508 (LexisNexis 2015).

[¶38] This Court has had occasion to rule on the validity of ordinances requiring someone to pay fees for connecting a development to the sewer system operated by another city. *Coulter v. City of Rawlins*, 662 P.2d 888, 890 (Wyo. 1983). In *Coulter*, we examined the applicable statutory provisions and highlighted § 15-7-508 (as it similarly existed back then), explaining that municipalities can charge rates for sewerage system services, which are to be used for paying the cost of operating and maintaining the system as well as paying the principal and interest on bonds issued to pay for the system. *Id.* at 897-98.

[¶39] Although municipalities have statutory authority to charge fees and rates, those revenues appear not to be statutorily authorized for *loans* associated with the sewerage facility. Indeed, this is part of Appellants' allegations in their complaint: first, Alpine exceeded its constitutional and statutory authority in borrowing the amount it did for the construction of the new facility (instead of issuing bonds); and second, the revenues received through sewerage system fees and rates cannot be applied to the alleged illegal loans. In addition to the allegations in the complaint already mentioned, which are incorporated into the injunctive relief claim, *see* ¶¶ 28-29 *supra*, Appellants also allege the following in their injunctive relief claim:

> 23. As a direct cause and consequence of the acts, omissions, and enactments of Defendants, Plaintiffs will be irreparably harmed in their business activities, real estate values, and personal property values in such manners as to entitle them to an order or orders from the Court enjoining the Town of Alpine from enforcing its enactments and to refrain from any further activity harmful to Plaintiff's interests.

12

[¶40] The allegations supporting Appellants' claim for injunctive relief are legally sufficient in this case, and consequently the drastic remedy of dismissal cannot be affirmed. Accepting the facts averred in the complaint as true and viewing them in the light most favorable to Appellants as we must at this procedural juncture, we conclude that they may be able to prove facts that would entitle them to relief. Accordingly, we reverse the district court on this point as well. As with the declaratory judgment claim, the truth of the allegations of standing may of course be tested by summary judgment or at trial.

### 3. Inverse Condemnation (CV-2009-176)

[¶41] Appellants faintly assert that the district court erred in dismissing their inverse condemnation claim. Unfortunately, the one page that they expended on this issue in their brief does not provide cogent argument that would enable us to effectively review it. "We consistently have refused to consider arguments not supported by cogent argument and citation to legal authority." *In interest of DT*, 2017 WY 36, ¶ 29, 391 P.3d 1136. 1145 (Wyo. 2017) (quoting *Peak v. Peak*, 2016 WY 109, ¶ 11, 383 P.3d 1084, 1088 (Wyo. 2016)); *see also Greer v. Greer*, 2017 WY 35, ¶ 34, 391 P.3d 1127, 1135 (Wyo. 2017). Accordingly, we affirm the district court's dismissal of Appellants' inverse condemnation claim.

### 4. Tort Claims Act (CV-2011-132)

[¶42] Appellants argue that that the district court erred in dismissing their abuse of process and civil conspiracy claims because it believed them to be barred by the Wyoming Governmental Claims Act. The WGCA states that a "governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 1-39-121." Wyo. Stat. Ann. § 1-39-104 (LexisNexis 2015). We have described the statute as a "closed-ended tort claims act" because it generally grants immunity, waiving it only through specific statutory exceptions. *DiFelici v. City of Lander*, 2013 WY 141, ¶ 8, 312 P.3d 816, 819 (Wyo. 2013); *Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 15, 236 P.3d 1009, 1016 (Wyo. 2010); *Sponsel v. Park Cty.*, 2006 WY 6, ¶ 18, 126 P.3d 105, 110 (Wyo. 2006); Lawrence J. Wolfe, Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity with Exceptions—A Statutory Analysis*, XV Land & Water L. Rev. 619, 621-23 (1980). Appellants must therefore identify a specific statutory exception to the Act's general grant of immunity.

[¶43] The only exception that allows liability for an intentional tort applies to "tortious conduct" of peace officers. Wyo. Stat. Ann. § 1-39-112 (LexisNexis 2015) ("A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties."). The circumstances of this case do not fit that exception. All other exceptions waive immunity only for negligent

conduct. *See, e.g.,* Wyo. Stat. Ann. § 1-39-108 (LexisNexis 2015) (waiving immunity for bodily injury, wrongful death or property damage resulting for activities of public utilities including handling solid and liquid waste only for negligence, not intentional or "tortious conduct," of public employees).

[¶44]  Appellants have failed to present cogent argument and citation to legal authority which would support a claim that the Act means something other than what it says. Consequently, we refuse to consider this issue further and simply affirm the district court's dismissal of those claims as well. *See Greer*, ¶ 34, 391 P.3d at 1135.

### *Issues Relating to Nelson's Motion for Summary Judgment*

[¶45]  The district court granted Nelson's motion for summary judgment on the tort claims asserted in CV-2011-132.  Summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. W.R.C.P. 56(a).

[¶46]  We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling.  *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016).  This Court reviews the same materials and uses the same legal standard as the district court.  *Id.*  The record is assessed from the vantage point most favorable to the party opposing the motion (in this case Appellants), and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record.  *Id.*  A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  *Id.*  If the moving party, here Nelson, presented supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden shifted to Appellants to present appropriate supporting materials posing a genuine issue of a material fact for trial.  *Id.*

#### *1. Abuse of Process*

[¶47]  The district court granted summary judgment in favor of Nelson on Appellants' abuse of legal process claim, concluding that there were no genuine issues of material fact that Nelson used a process for a purpose other than for what it was designed to accomplish.  After assessing the admissible evidence presented, the district court reasoned that there was no evidence suggesting that Nelson had any knowledge or information that the letter it sent to DEQ was unwarranted or unnecessary.  Further, the district court concluded that there was no evidence showing that the letter was not proper in the ordinary conduct of a DEQ proceeding because drafting a letter to the DEQ to report violations is allowed under the relevant process.

14

[¶48] We agree that there was no abuse of process by Nelson as a matter of law, but we arrive at this result by a different path. A review of the record reveals that the circumstances of this case simply do not fit the requirements for a claim of abuse of process. *See Chapman v. Wyoming Dep't of Corr.,* 2016 WY 5, ¶ 6, 366 P.3d 499, 505 (Wyo. 2016) ("We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record.").

[¶49] The tort of abuse of process provides redress only for tortious conduct occurring within a legal proceeding. We have defined the elements of a claim of abuse of legal process as "(1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper in the regular conduct of the ***legal*** proceeding." *Cosner v. Ridinger*, 882 P.2d 1243, 1249 (Wyo. 1994) (emphasis added) (quoting *Mummery v. Polk*, 770 P.2d 241, 243 (Wyo. 1989)).

[¶50] In all of this Court's precedent dealing with this intentional tort, the allegedly improper conduct related to a "legal proceeding." *See, e.g., Drake v. McCulloh*, 2002 WY 50, ¶ 23, 43 P.3d 578, 586 (Wyo. 2002) (abuse of process claim regarding recusal of judge); *Cosner*, 882 P.2d at 1249 (abuse of process claim dealing with the filing of the various guardianship and habeas corpus proceedings without notice); *Mummery*, 770 P.3d at 243 (abuse of process claim based on executing a judgment); *Bosler v. Shuck*, 714 P.2d 1231, 1234-35 (Wyo. 1986) (abuse of process claim regarding initiation of criminal complaint); *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808, 810-13 (Wyo. 1986) (abuse of process claim arising from filing of lawsuit); *Foothill Industrial Bank v. Mikkelson,* 623 P.2d 748, 757 (Wyo. 1981) (abuse of process claim concerning mortgagor's action against the mortgagee when the mortgagee accelerated payments on a note after the mortgagors defaulted).

[¶51] In *Bosler*, we described the essence of the tort of abuse of legal process as arising from misuse of the power of the court. 714 P.2d at 1234. It must be an act intended to perpetrate injustice, veiled in conduct claiming to be in the name of the court and under its authority. *Id.* Put plainly, the tort of abuse of process is available where there is a "perversion of the legal process." *Id.* The Restatement confirms the correctness of our previous analysis:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

Restatement (Second) of Torts § 682 (March 2017 update); *see also* Dan B. Dobbs, *Law of Torts,* § 594 (2016 update).

[¶52] The letter Nelson sent to DEQ falls outside any legal proceeding or process. It was a report of a claimed violation to an agency which had the authority to investigate the complaint, and if appropriate, take some administrative action. Consequently, the district court's grant of summary judgment was proper and is affirmed for this reason.

### 2. Civil Conspiracy

[¶53] Appellants' entire argument on the district court's grant of summary judgment of their civil conspiracy claim against Nelson is only a quarter of a page. Appellants have again failed to present any cogent argument that would allow this Court to conduct an effective review. Consequently, we refuse to consider this issue and simply affirm the district court's order on that claim. *See Greer*, ¶ 34, 391 P.3d at 1135.

## CONCLUSION

[¶54] Appellants sufficiently pled standing to pursue their declaratory judgment claim against Alpine in CV-2009-176, and we accordingly reverse the district court's decision to the contrary. Additionally, the allegations supporting Appellants' claim for injunctive relief against Alpine are legally sufficient, and we also reverse the dismissal of that claim in CV-2009-176.

[¶55] The district court's respective orders on all the remaining claims in CV-2009-176 and CV-2011-132 against Alpine and Nelson are affirmed.

[¶56] Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.