# THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 115

**APRIL TERM, A.D. 2022**

**September 22, 2022**

STEVE ALLEN WELDON,

Appellant
(Plaintiff),

v.

THE HONORABLE MARK GORDON,
Governor of the State of Wyoming, and
WYOMING BOARD OF PAROLE,

Appellees
(Defendants).

S-21-0241

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
Steve Allen Weldon, pro se.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames\*, Senior Assistant Attorney General; Kristen Reeves Jones, Assistant Attorney General.

**\*** An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Steve Weldon is serving a life sentence and a consecutive five-to-ten-year sentence for crimes he committed in 1989.  He filed a declaratory judgment action against Wyoming Governor Mark Gordon (Governor) and the Wyoming Board of Parole (Board) alleging Wyoming's commutation procedures are unconstitutional.  The district court dismissed his claims, concluding he lacked standing to challenge Wyoming's commutation procedures and the procedures did not violate his constitutional rights.  We affirm.

## ISSUE

[¶2]    The dispositive issue is whether Mr. Weldon has standing to challenge the procedures that were used to review his commutation petition.

## FACTS

[¶3]    In 1989, Mr. Weldon pled guilty to "first-degree murder, conspiracy to deliver a controlled substance, and aggravated assault and battery." *Weldon v. State*, 800 P.2d 513, 513 (Wyo. 1990).  He was sentenced to life in prison for first-degree murder and two concurrent terms of five-to-ten years for conspiracy and aggravated assault and battery that would be served consecutively to the life sentence. *Id.* at 514.

[¶4]    In 2017, Mr. Weldon filed a petition for commutation with the Board asking it to recommend that the Governor commute his life sentence to time served.  The Board set a hearing on Mr. Weldon's petition.  However, he later waived this hearing, so the Board did not consider his petition or forward it to the Governor.

[¶5]    In 2019, Mr. Weldon mailed a new commutation petition directly to the Governor.  The Governor received the petition and forwarded it to the Wyoming Attorney General, who then sent it to the Board.  The Board notified Mr. Weldon that he was ineligible to petition for commutation because its policy allows an inmate to petition only once every five years, so he was not eligible to petition for commutation until June of 2022.

[¶6]    Mr. Weldon filed suit against the Governor and the Board under the Uniform Declaratory Judgments Act, Wyoming statutes §§ 1-37-101 et seq., seeking a declaration that Wyoming's commutation procedures were unconstitutional.  The Governor and the Board (collectively referred to as the State) filed a combined motion to dismiss, arguing Mr. Weldon failed to state a claim for relief.  The district court granted the motion, finding Mr. Weldon lacked standing, and Wyoming's commutation procedures did not violate his constitutional rights.  This appeal followed.

1

## STANDARD OF REVIEW

[¶7]    "Whether a party has standing to maintain a declaratory judgment action is a question of law that we review de novo." *Bd. of Trustees of Laramie Cnty. v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 2020 WY 41, ¶ 6, 460 P.3d 251, 254 (Wyo. 2020) (citing *Williams v. State ex rel. Univ. of Wyo. Bd. of Trs.*, 2019 WY 90, ¶ 7, 448 P.3d 222, 226 (Wyo. 2019)).

## DISCUSSION

[¶8]    "In order to maintain an action for declaratory judgment, the party seeking relief must be an 'interested' person." *Forbes v. Forbes*, 2022 WY 59, ¶ 33, 509 P.3d 888, 897 (Wyo. 2022) (citing *The Tavern, LLC, v. Town of Alpine*, 2017 WY 56, ¶ 25, 395 P.3d 167, 174 (Wyo. 2017)).  The "requirement of an 'interest' captures the basic doctrine that there must be a justiciable controversy before relief will be granted." *Id.* (quoting *William F. West Ranch, LLC v. Tyrell*, 2009 WY 62, ¶ 11, 206 P.3d 722, 727 (Wyo. 2009)).  The concept of justiciability encompasses many doctrines, including the doctrine of standing. *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo. 2003) (citing *Reiman Corp. v. City of Cheyenne*, 838 P.2d 1182, 1186 (Wyo. 1992).

[¶9]    "Standing focuses on a litigant being properly situated to assert an issue for judicial determination." *The Tavern, LLC*, 2017 WY 56, ¶ 26, 395 P.3d at 174 (citing *Carnahan v. Lewis*, 2012 WY 45, ¶ 18, 273 P.3d 1065, 1071 (Wyo. 2012)).  "A litigant has standing when he has a personal stake in the outcome of the controversy." *Cox*, ¶ 9, 79 P.3d at 505 (citing *State ex rel. Bayou Liquors, Inc. v. City of Casper*, 906 P.2d 1046, 1048 (Wyo. 1995).  We have explained that the concept of standing in the declaratory judgment context requires a person to "show a 'perceptible,' rather than a 'speculative' harm from the action; a remote possibility of injury is not sufficient to confer standing." *The Tavern, LLC*, ¶ 33, 395 P.3d at 176 (quoting *Carnahan*, ¶ 26, 273 P.3d at 1073).

[¶10]  To establish a justiciable controversy under the Uniform Declaratory Judgments Act, we apply the four-part *Brimmer* test. *Forbes*, 2022 WY 59, ¶ 33, 509 P.3d at 898. The four parts or elements of the *Brimmer* test are:

> 1.     The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2.     The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parities in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Forbes*, ¶ 34, 509 P.3d at 898 (citing *Johnson Cnty. Ranch Improvement #1, LLC v. Goddard*, 2020 WY 115, ¶ 51, 471 P.3d 307, 322 (Wyo. 2020)).

[¶11] Mr. Weldon claims he has a genuine interest in this case because his "life and freedom are on the line." He asserts he has an existing or genuine right at stake because resolution of this action "will determine whether the right of prisoners to Petition for a Commutation continues to exist in any Constitutionally meaningful manner." The State asserts Mr. Weldon does not have a genuine interest or right at stake in this case because he has no right to be considered for or granted commutation.

[¶12] Mr. Weldon attempts to frame the issue in this case as implicating his right to petition the government for a redress of his grievances. However, it is undisputed that Mr. Weldon did file a petition for commutation, which was received by the Governor. No state agent prevented him from sending his petition to the Governor. Mr. Weldon's brief contains a list of eight items identified as his "prayer for relief." He contends:

1) the process utilized for his petition improperly gave too much authority to the Board;

2) the Board has no jurisdiction to deny a petition because it is the sole province of the Governor;

3) the Board's policy of requiring five years between petitions amounts to a denial or a curtailment of a petition for commutation;

4) the Board's "current involvement in the [c]ommutation process violates . . . Article 1, § 21 of the Wyoming constitution and the First Amendment of the United States Constitution";

3

5) the involvement of the Board in commutation decisions requires a full quorum of the Board, and the Board cannot make a petitioner appear before a three-member panel and a separate seven-member panel;

6) the commutation process is unconstitutional;

7) clemency is his "only means of obtaining release from confinement before death," and if he is not granted clemency, his life sentence is a de facto death sentence; and

8) the Governor cannot constitutionally allow another person or entity to exercise power that is constitutionally vested exclusively in the office of the Governor.

The relief requested in his brief demonstrates Mr. Weldon is not seeking to enforce his right to file a commutation petition. Instead, he is seeking to challenge the procedures that were used to handle his commutation petition after it was received by the Governor.

[¶13] The first *Brimmer* element requires an "existing and genuine, as distinguished from theoretical, [right]." *Forbes*, ¶ 34, 509 P.3d at 898 (citing *Johnson Cnty. Ranch Improvement #1*, 2020 WY 115, ¶ 51, 471 P.3d at 322). To have a protectable right "a person must demonstrate more than an abstract need or desire for the right; he must have more than a unilateral expectation of it. [He] must have a legitimate claim of entitlement to a protectable right." *Dorman v. State*, 665 P.2d 511, 514 (Wyo. 1983) (citing *Bd. of Regents of State Colleges, et. al v. Roth*, 408 U.S. 564, 570–71, 92 S. Ct. 2701, 2705-06, 33 L. Ed. 2d 548 (1972)). "Wyoming law creates a total life sentence which is unaffected by parole or good time . . . Therefore, under present and long existent Wyoming law, the only remission except death that can be provided from the life sentence is by action through the executive power of commutation." *Weldon*, 800 P.2d at 514; *see also Bird v. Wyo. Bd. of Parole*, 2016 WY 100, ¶ 14, 382 P.3d 56, 64 (Wyo. 2016) ("[T]he only avenue for release of a prisoner sentenced to life according to law is through clemency—either a commutation of his sentence or a pardon—at the discretion of the governor."). This does not mean an inmate has a protectable right or interest in commutation. "The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right[.]" *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S. Ct. 2460, 2464, 69 L. Ed. 2d 158 (1981) (citing *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103, 60 L. Ed. 2d 668 (1979)). An inmate's "expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Dumschat*, 452 U.S. at 465, 101 S. Ct. at 2465 (footnote omitted) (citing *Greenholtz*, 442 U.S. at 11, 99 S. Ct. at 2106; *see also Bird*, 2016 WY 100, ¶ 10,

4

382 P.3d at 62–63 (stating prisoners serving life sentences "have little hope of ever leaving the prison system").

[¶14] Commutation "is an ad hoc exercise of executive clemency. A Governor may commute a sentence at any time for any reason without reference to any standards." *Solem v. Helm*, 463 U.S. 277, 301, 103 S. Ct. 3001, 3015, 77 L. Ed.2d 637 (1983)). The Supreme Court of the United States has recognized "an inmate has 'no constitutional or inherent right' to commutation of his sentence." *Dumschat*, 452 U.S. at 464, 101 S. Ct. at 2464 (citing *Greenholtz*, 442 U.S. at 9-10, 99 S. Ct. at 2104–05; *see also District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67–68, 129 S. Ct. 2308, 2319, 174 L. Ed. 2d. 38 (2009) (holding "noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law."). Similarly, we have recognized "[t]here is no vested right to clemency; it 'is a matter of grace.'" *Bird*, 2016 WY 100, ¶ 14, 382 P.3d at 64 (quoting *Bird v. LeMaitre*, 371 Fed. Appx. 938, 940 (10th Cir. 2010)). The "mere existence of a power to commute a lawfully imposed sentence, and the granting of commutations to many petitioners, create no right or 'entitlement'" to commutation. *Dumschat*, 452 U.S. at 467, 101 S. Ct. at 2465. "[T]he availability of clemency, or the manner in which the State conducts clemency proceedings, does not impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' A denial of clemency merely means that the inmate must serve the sentence originally imposed." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 283, 118 S. Ct. 1244, 1251, 140 L. Ed. 2d 387 (1998) (internal citation omitted) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.2d 418 (1995)). Because Mr. Weldon does not have a protected interest in or right to clemency, he "cannot challenge the constitutionality of any procedures available to vindicate an interest in state clemency." *Osborne*, 557 U.S. at 68, 129 S. Ct. at 2319. Mr. Weldon does not have the type of existing and genuine right or interest that is necessary to satisfy the first *Brimmer* element.

[¶15] Mr. Weldon's claims also fail to satisfy the second element of the *Brimmer* test. This element requires the controversy to "be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion." *Forbes*, 2022 WY 59, ¶ 34, 509 P.3d at 898 (citing *Johnson Cnty. Ranch Improvement #1*, 2020 WY 115, ¶ 51, 471 P.3d at 322). The State contends Mr. Weldon has not presented a justiciable controversy because clemency is a political process that is not subject to judicial review.

[¶16] Political questions are "beyond the jurisdiction of the judiciary to determine . . . ." *State ex rel. Schieck v. Hathaway*, 493 P.2d 759, 762–63 (Wyo. 1972). We have explained the political questions doctrine as follows:

> The political questions doctrine focuses upon those matters where there is "a textually demonstrable constitutional

5

commitment of the issue to a coordinate political department; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Cathcart v. Meyer*, 2004 WY 49, ¶ 25, 88 P.3d 1050, 1061 (Wyo. 2004) (quoting *Hathaway*, 493 P.2d at 762–63). The text of the Wyoming constitution commits the issue of granting commutations to the Governor:

The governor shall have power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction . . . but the legislature may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for.

Wyo. Const. art. 4, § 5. "[C]ommutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Woodard*, 523 U.S. at 276, 118 S. Ct. at 1247 (quoting *Dumschat*, 452 U.S. at 464, 101 S. Ct. at 2464) (footnote omitted).

[¶17] Clemency is "a prerogative granted to executive authorities to help ensure that justice is tempered by mercy." *Cavazos v. Smith*, 565 U.S. 1, 8–9, 132 S. Ct. 2, 7, 181 L. Ed. 2d 311 (2011). "It is not for the Judicial Branch to determine the standard for [the discretionary exercise of clemency]. If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention." *Id*. at 9, 132 S. Ct. at 7. "It is not the function of the judicial branch to pass judgment on the general performance of other branches of government." *William F. West Ranch*, 2009 WY 62, ¶ 32, 206 P.3d at 733. Long ago we recognized the Governor has "complete jurisdiction" to grant commutations and pardons, and "[w]e cannot inquire whether the pardoning power has been exercised judiciously, or whether the proceedings preliminary to the granting of the pardon were irregular, if any such were necessary." *In re Moore*, 31 P. 980, 982 (Wyo. 1893). Although this case involves a commutation rather than a pardon, the same rule applies. This Court cannot and must not make any order or ruling which requires the Governor to follow any certain procedure in handling commutation petitions presented for his review. Whether the Governor considers a commutation petition at all, or the method he chooses to employ in any review, is entirely a political question that is within the Governor's discretion.

[¶18] Mr. Weldon has a right to petition for commutation, and he exercised that right. However, Mr. Weldon does not have the right to insist that the Governor consider his petition or to dictate the procedures that must be followed when considering such a petition.

Because he cannot satisfy the first or second *Brimmer* elements, Mr. Weldon lacks standing, and the district court properly dismissed his declaratory judgment action.

## **CONCLUSION**

[¶19] Mr. Weldon lacks standing to bring his declaratory judgment action because he does not have an existing or genuine interest in or right to commutation, and commutation decisions involve a political question that is not an appropriate subject for judicial review. The district court's decision is affirmed.